[No. H024127. Sixth Dist. Mar. 30, 2005.]

COUNTY OF SANTA CRUZ, Plaintiff and Appellant, v.
KENNETH WATERHOUSE et al., Defendants and Respondents.

1486

COUNSEL

Dana McRae and Dwight L. Herr, County Counsel, for Plaintiff and Appellant.

Law Office of Spangenberg & Ritson, David Spangenberg and Lark L. Ritson for Defendant and Respondent Kenneth Waterhouse et al.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, John Davidson and Mark William Poole, Deputy Attorneys General, for Defendants and Respondents California Department of Housing & Community Development.

OPINION

RUSHING, P. J.—

STATEMENT OF THE FACTS AND CASE

Yacht Harbor Manor Mobilehome Park is owned and operated by defendants and respondents Kenneth Waterhouse and Waterhouse Corporation (Waterhouse).

Pursuant to the California Mobilehome Parks Act (MPA), which vests the power to issue permits for the installation of mobilehomes in California with the California Department of Housing and Community Development (HCD), Waterhouse applied for a permit to install a two-story mobilehome in the Yacht Harbor Manor Mobilehome Park. HCD initially rejected the application because it was incomplete, but subsequently issued the permit in August 2001.

Prior to HCD issuing the permit to Waterhouse, in June 2001, plaintiff and appellant County of Santa Cruz (the County) adopted an interim ordinance, which prohibits mobilehomes within mobilehome parks from exceeding one story or 17 feet in height unless the County grants an exception.

The County filed an action in superior court requesting injunctive and declaratory relief against Waterhouse for its plan to install the two-story mobilehome without the County's express approval. The case was submitted by stipulation of the parties on the basis of briefs, requests for judicial notice,

stipulation of fact and oral argument. The court denied the County's request for a permanent injunction and declaratory relief, and held the County's ordinance requiring local approval for the installation of two-story mobilehomes was preempted by the MPA.

The County filed a timely notice of appeal.

### DISCUSSION

The issue presented by this appeal is whether the MPA preempts a county ordinance requiring local planning approval for the installation of multistory mobilehomes.

■ Because the question presented in this case is whether state law preempts a local ordinance, it is a pure question of law subject to de novo review. (*Roble Vista Associates v. Bacon* (2002) 97 Cal.App.4th 335, 339 [118 Cal.Rptr.2d 295].)

### Santa Cruz County Ordinance No. 4628

■ The California Constitution provides counties such as Santa Cruz general police power to enact ordinances and regulations deemed necessary to protect the public health. (Cal. Const., art. XI, § 7.) Such ordinances and regulations prevail over all state laws other than those that specifically address matters of statewide concern. (Cal. Const., art. XI, § 5.)

In that vein, and in order to address the issue of multistory mobilehomes, County adopted Santa Cruz Ordinance No. 4628 (Ordinance No. 4628), which prohibits mobilehomes within mobilehome parks from exceeding one story or 17 feet in height unless the County grants an exception. Specifically, the ordinance provides: "existing mobile home parks shall be subject to the restriction that an individual mobile home or accessory building shall not exceed one story or seventeen (17) feet in height unless an exception is granted pursuant to subdivision (f) of Section 13.10.684." (Santa Cruz County Code, § 13.10.458.)

### Validity of Ordinance No. 4628

■ The question of whether Ordinance No. 4628 is valid depends on whether state law preempts it. The California Supreme Court in *Sherwin Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893 [16 Cal.Rptr.2d 215,

844 P.2d 534] set forth the standard for determining if a state law preempts a local ordinance. A local ordinance will be preempted if it conflicts with state law, and a conflict exists if the local legislation " ' " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]" (*Id.* at p. 897.) Full occupation of the field is demonstrated by the Legislature's express manifestation of its intent to occupy the field, or "when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality. [Citations.]" (*Id.* at p. 898.)

*The Mobilehome Parks Act*

■ Here, the state law at issue is the MPA, which is embodied in Health and Safety Code section 18300 et seq.,[1] and provides for the regulation of mobilehome construction and installation in California. The MPA clearly expresses that it is California state policy to ensure that mobilehome parks are operated to assure the "health, safety, general welfare, and . . . decent living environment" of the residents, as well as protect the investment value of mobilehomes. (§ 18250.) The MPA's goals of promoting the health and safety of mobilehome residents are implemented through the HCD's establishment of standards for "construction, maintenance, occupancy, use, and design of . . . parks." (§ 18251.) The MPA mandates that these standards, found in the California Code of Regulations, title 25, section 1000 et seq., "should be flexible enough to accommodate new technologies and to allow designs that reduce costs and enhance the living environment of park residents." (§ 18251; see §§ 18253, 18610.)

The Legislature's goal of promoting uniformity in mobilehome construction and installation standards impliedly demonstrates that California fully occupies the area of mobilehome regulation. Indeed, the goal of uniformity can only be achieved through occupation of the field, alleviating variances in local regulation. The MPA's purpose of protecting the health and welfare of

---

[1] All further statutory references are to the Health and Safety Code.

the residents of mobilehome parks, as well as the investment value of mobilehomes, can only be achieved through the centralized regulatory power of the HCD. Without such centralized regulation, mobilehome owners would be subject to the specific and particularized whims of a local county or municipality, and would in effect be hampered in his or her ability to move the mobilehome within the state.[2] This result is clearly what the Legislature intended to prevent with the enactment of the MPA.

In addition to the Legislative goals of the MPA impliedly demonstrating full occupation of the field, the Legislature expressly states its intent that the MPA preempt local regulation. Importantly, the outset of section 18300 contains language that the MPA "supercedes any ordinance enacted by any city, county, or city and county, whether general law or chartered, applicable to this part." (§ 18300, subd. (a).) However, the preemption language in section 18300 has changed through amendment in recent years. In its previous wording, section 18010 (the predecessor to section 18300) allowed local regulation in "areas which, although not specifically excepted, are not covered by the 80 sections of said part." Section 18010 as it existed in 1963 provided, in relevant part: "The provisions of this part apply to all parts of the State and supercede any ordinance enacted by any city, county, or city and county applicable to the provisions of this part." (Added by Stats. 1961, ch. 2176, § 2, p. 4503.)

In its 1963 analysis of the MPA, the Attorney General concluded that the State did not fully occupy the field of mobilehome regulation, stating that had the section read "applicable to this part," rather than " 'applicable to the provisions of this part,' " " 'the [state's] occupation of the field . . . would be clear.' " (41 Ops.Cal.Atty.Gen., *supra*, at p. 32, italics omitted.)

Currently, section 18300 reads: "this part applies to all parts of the state and supercedes any ordinance enacted by any city, county, or city and county, whether general law or chartered, *applicable to this part.*" (§ 18300, subd. (a), italics added.) The state makes much of the fact that this change in the legislation occurred after the Attorney General's opinion, arguing that the amendment was in response to the opinion and demonstrated the state's intent to occupy the field. The County is quick to point out, however, the amendment

---

[2] Our view of the importance of centralization of mobilehome regulation is supported by the Attorney General's analysis of the MPA prepared in 1963. In that analysis, the Attorney General states: "it would be an unreasonable burden upon owners or users of mobilehomes if extensive changes would have to be made in a mobilehome when it was taken to another city or county." (41 Ops.Cal.Atty.Gen. 28, 31 (1963).)

was made in 1985, over 22 years after the Attorney General's opinion, and was part of "clean-up" legislation, not a substantive change in the MPA to indicate the state's intent to occupy the field.

Regardless of the parties' position on the timing of the amendment of the MPA and whether it was in fact in response to the Attorney General's opinion, it is unmistakable that the MPA now clearly states: "applicable to this part." The Attorney General's opinion that the phrase: "applicable to this part," demonstrates the state's intent to occupy the field is as true today as it was in 1963. It is immaterial that the amendment occurred 22 years after the opinion, and as part of clean-up legislation; the language clearly demonstrates the state's intent to occupy the field of mobilehome regulation in California.

*Case Law in California Dealing with the MPA*

On the issue of preemption, there is very little case law in California that addresses the MPA. The few cases that do address section 18300 do so in a limited way, and do not support the County's position that it has the authority to regulate the height of mobilehomes. *Watson v. County of Merced* (1969) 274 Cal.App.2d 263 [78 Cal.Rptr. 807], and *Lagrutta v. City Council* (1970) 9 Cal.App.3d 890 [96 Cal.Rptr. 627], both cited by the County in support of its position that it may regulate the height of mobilehomes, are distinguishable from the present case. In *Watson,* the court considered whether the MPA preempted a local ordinance that imposed a license fee on mobilehomes outside of mobilehome parks. The court concluded that because former section 18300, subdivision (c) allowed for local exercise of power to require permits outside mobilehome parks, the local ordinance was valid and not preempted. (*Watson v. County of Merced, supra,* 274 Cal.App.2d at p. 265.)

The *Lagrutta* case dealt with a similar issue. In *Lagrutta,* the court considered whether a city could deny the issuance of a special use permit for a mobilehome park in the City of Stockton. The court cited *Watson* in support of its holding that the city had power to make zoning decisions based on the language of former section 18300, subdivision (a). (*Lagrutta v. City Council, supra,* 9 Cal.App.3d at p. 893.)

Both *Watson* and *Lagrutta* are inapplicable to the present case. In both, the courts determined that the local ordinance in place was not preempted by the MPA; however, important to both cases' analyses was the fact that the MPA specifically provided for local authority to enact the legislation at issue in the

cases. Here, there is no such specific provision in the MPA providing local authority to enact legislation regulating the construction of mobilehomes.

Similarly, *Griffith v. County of Santa Cruz* (2000) 79 Cal.App.4th 1318 [94 Cal.Rptr.2d 801] does not support the County's position in this case, and is distinguishable. In *Griffith*, a panel of this court considered whether the County of Santa Cruz could impose its rent control ordinance on mobilehome parks, or whether it was preempted by the MPA. This court held that the MPA governs the construction, maintenance, use and operation of mobilehome parks, but does not specifically regulate tenancies. Additionally, this court noted that the Mobilehome Residency Law (Civ. Code, § 798 et seq.) and the Recreational Vehicle Park Occupancy Law (Civ. Code, § 799.20 et seq.) regulate mobilehome and recreational vehicle tenancies, and landlord-tenant relationships. (*Griffith v. County of Santa Cruz, supra,* 79 Cal.App.4th at pp. 1322–1323.) This court concluded that .because neither of the tenancy related statutes specifically preempted local rent controls of mobilehomes, the local ordinance was valid. (*Ibid.*) *Griffith* does not support the County's position in this case.

*Exceptions to Preemption in the MPA for Zoning and Lot Lines*

██ Despite the fact that the State fully occupies the field of mobilehome regulation in California, and the MPA's clear statement of its preemption of local laws that attempt to regulate mobilehomes, the MPA also provides for exceptions for local regulation. The specific exceptions to the general pre-emption provision found in section 18300, subdivision (a) are stated in section 18300, subdivision (g)(1) and (5) as follows:

"(g) This part shall not prevent local authorities of any city, county, or city and county, within the reasonable exercise of their police powers, from doing any of the following:

"(1) From establishing, subject to the requirements of Sections 65852.3 and 65852.7 of the Government Code, certain zones for manufactured homes, mobilehomes, mobilehome parks within the city, county, or city and county, or establishing types of uses and locations, including family mobilehome parks, senior mobilehome parks, mobilehome condominiums, mobilehome subdivisions, or mobilehome planned unit developments within the city, county, or city and county, as defined in the zoning ordinance, or from adopting rules and regulations by ordinance or resolution prescribing park perimeters walls or enclosures on public street frontage, signs, access, and vehicle parking or from prescribing the prohibition of certain uses for mobilehome parks. [¶] . . . [¶]

"(5) From authorizing the creation, movement, shifting, or alteration of mobilehome park lot lines as specified in Section 18610.5."

■ The exceptions stated above specifically provide for local regulation of zoning and lot lines for mobilehome parks, and not the height of mobilehomes within their confines. Therefore, the question is whether the exceptions for regulation of zoning and lot lines include the power to regulate the height of mobilehomes. The County asserts that it can limit the height of mobilehomes based on the zoning authority in section 18300, subdivision (g)(1), and the creation and movement of mobilehome park lot lines in section 18300, subdivision (g)(5). However, these sections confer upon the County the power to regulate the location of mobilehome parks, lot lines within the parks, and the usage for the parks (e.g., senior or family mobilehome parks). There is nothing stated in the sections providing the County authority to regulate the structure of the mobilehome units within the parks.

■ In support of its position that the zoning exception in the MPA provides it authority to regulate the height of mobilehomes, the County argues that the land use regulations of Government Code section 65800 et seq. referenced in section 18300, subdivision (g) allow for local regulation of the height of mobilehomes. Specifically, Government Code section 65850 authorizes localities to enact zoning ordinances, and ordinances regarding signs and billboards, lot size, yard and open space, and parking. The County asserts that these provisions give it the authority to regulate the height of mobilehomes within its confines. How ever, when compared to the provisions of section 18300, it is clear that the Legislature intended to limit local authority for zoning regulation to the specifically enumerated exceptions of *where* a mobilehome park may be located, vehicle parking, and lot lines, not the structures within the parks.

*Parking and Density Provisions in the MPA*

■ The County additionally asserts that the parking provisions in section 18300, subdivision (g)(1) provide local authority to regulate the height of mobilehomes. However, section 18300, subdivision (g)(1)'s grant of authority to counties to regulate the number of cars that may be parked for each mobilehome unit in no way implicates authority to regulate whether a two-story mobilehome may be installed. Moreover, it is undisputed in this case that Waterhouse complied with all county regulations regarding two parking places per mobilehome unit.

Finally, the County asserts that the MPA's provisions regarding regulation of density demonstrate that the ordinance in this case is valid. Specifically, section 18300, subdivision (h)(1) provides: "A city, including a charter city, county or city and county, shall not require the average density in a new park plan to be less than that permitted by the applicable zoning ordinance, plus any density bonus, as defined in Section 65915 of the Government Code, for other affordable housing forms."

■ It is important to note that, on its face, section 18300, subdivision (h) only applies to new parks; Waterhouse was originally issued its permit in 1962, making this section inapplicable. More important, however, is the fact that section 18300, subdivision (h) is a *limitation* on the County's ability to regulate zoning, not a grant of authority. As such, it does not provide the County with authority to regulate the height of mobilehomes.

■ Additionally, a locality may regulate density by limiting the number of units or spaces per acre when it initially approves the zoning of the new park, by establishing the number of lots and the specific lot lines. (§§ 18300.1, 18300, subd. (g)(5).) However, the ability to regulate density and lot lines is limited by the provision of section 18300, subdivision (h), which requires that the density for a mobilehome park be no less than surrounding residential zoning.

■ With regard to the argument that the zoning, lot line and density provisions of the MPA provide the County with the authority to regulate the height of mobilehomes, we see no difference between the installation of a two-story mobilehome and a double- or triple-wide mobilehome under the MPA. The County attempts to use the installation of double-wide and triple-wide mobilehome units as support for its position that it may regulate the height of mobilehomes, stating: "If a double-wide or triple-wide mobilehome does not fit within the existing lot lines and meet the required setbacks, it cannot be installed." The County goes on to argue by analogy that just because a two-story unit meets the federal and state construction standards, it does not necessarily mean it can be installed in any lot in a particular park. These arguments are correct, as far as they go. What is not stated, however, is the fact that if a double-wide or triple-wide mobilehome is built according to the MPA and federal construction standards and it is being installed within the lot line requirements for the park, a locality cannot prevent its installation. Similarly, a two-story mobilehome, if it meets the construction standards, can be installed in a mobilehome park, provided it meets the lot line requirements. The MPA provides no authority to localities to regulate whether or not a double-wide or triple-wide is installed in its parks. Similarly, there is no authority to regulate whether a two-story unit is installed.

*The MPA's Section 18611 and its Reference to the Height of Mobilehomes*

There is only one specific reference to the height of mobilehomes in the MPA. That reference is found in section 18611, and provides: "(a) Factory-built housing . . . , mobilehomes as defined in Section 18008, or multiunit manufactured housing as defined in Section 18008.7 may be affixed to a foundation system within a mobilehome park, if the installation conforms to the rules of the mobilehome park, the installation is approved pursuant to

Section 19992, or in the case of manufactured homes, mobilehomes, or multiunit manufactured housing the installation is in accordance with Section 18551, and no single structure exceeds two stories in height. . . .

"(b) This section applies only to mobilehome parks (1) where the permit to construct the park is issued on or after January 1, 1982, and (2) that are additionally granted a zone designation or conditional use permit that authorizes permanent occupancies of the type and to the extent established pursuant to this section."

There is nothing in section 18611 that grants local authority to regulate the height of mobilehomes. By its own terms, section 18611 is limited to those mobilehomes that are (1) affixed to permanent foundations; and (2) located in parks "where the permit to construct the park is issued on or after January 1, 1982." (§ 18611.) This case does not involve a mobilehome affixed to a permanent foundation, and Waterhouse was issued its permit in 1962, making section 18611 inapplicable.

However, even if this case did involve an application for a two-story mobilehome on a permanent foundation, and we were to ignore the express language regarding the limitation to parks permitted after 1982, section 18611 does not allow local government to prevent the installation of a two-story mobilehome. If the mobilehome park is zoned by the county to provide for permanent foundations, section 18611 specifically allows the installation of a two-story mobilehome; local government cannot prevent its installation.

CONCLUSION

We conclude based on the specific language of section 18300 et seq., including the provisions that specifically state that the MPA preempts local legislation, as well as those provisions that allow limited local regulation, that the MPA preempts the ordinance in this case. The Legislature's goal of promoting uniformity in mobilehome construction and installation standards can only be achieved through centralized regulation of the MPA, alleviating variances in local regulation. Without such centralized regulation, a mobilehome owner would be subject to the specific and particularized whims of a local county or municipality, and would in effect be hampered in his or her ability to move the mobilehome within the state.

## Disposition

The judgment of the trial court is affirmed.

Premo, J., and Elia, J., concurred.

A petition for a rehearing was denied April 28, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 29, 2005. Brown, J., did not participate therein.