[No. H033464. Sixth Dist. Oct. 23, 2009.]

DAVID HOFFMAN, Plaintiff and Appellant, v.
SMITHWOODS RV PARK, LLC, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1105, it is ordered that this opinion is certified for publication, with the exception of part II.B. and C. of the Discussion.

COUNSEL

Greene, Chauvel, Descalso, & Minoletti, Paul G. Minoletti and Susan J. Bayerd for Plaintiff and Appellant.

Law Office of Anthony C. Rodriguez and Anthony C. Rodriguez for Defendant and Respondent.

OPINION

McADAMS, J.—This appeal follows a judgment of dismissal, entered after the trial court sustained defendant's demurrer without leave to amend. At issue is whether defendant engaged in actionable conduct when it refused to permit the installation of a new mobilehome in its mobilehome park, to replace an older one that plaintiff had inherited. As alleged in the complaint, defendant's refusal to approve the replacement home violated the Mobilehome Residency Law (Civ. Code, § 798 et seq.), breached the rental agreement to which plaintiff had succeeded, and interfered with the economic relations between him and the purchaser who had contracted to buy the older mobilehome.

On appeal, plaintiff contends that the court erred by failing to treat his well-pleaded factual allegations as true, by failing to recognize the preemptive effect of the Mobilehome Residency Law, and by justifying defendant's actions on the basis of its internal rules, which were not promulgated according to law. Plaintiff further contends that the trial court abused its discretion in failing to grant him leave to amend.

We conclude that the complaint fails to state a cause of action. Moreover, we find no abuse of discretion in failing to grant leave to amend. We therefore affirm the judgment of dismissal.

## FACTUAL BACKGROUND[1]

The parties to this action are plaintiff David Hoffman and defendant Smithwoods RV Park, LLC. Defendant owns and operates the San Lorenzo Mobile Home Park in Santa Cruz County.

Following the death of his mother, plaintiff inherited her mobilehome (the older mobilehome). The older mobilehome is located in defendant's park, at space 37.

### Rental Agreement

Plaintiff's mother occupied space 37 pursuant to a rental agreement with defendant, which had a one-year term commencing December 1, 2006. By its express terms, the rental agreement binds and benefits the contracting parties' heirs, successors, and assigns. An exhibit to the rental agreement sets forth the park's rules and regulations.

### Purchase Contract

In March 2007, plaintiff entered into a contract to sell the older mobilehome to "Wallace Homes or Assigns." Shortly thereafter, an escrow was opened, which identified the buyers as Wallace Homes Association and Thomas E. Rotter. The purchase contract provides that the sale is "contingent on park approval to replace old mobile with new one at no cost to seller." According to the complaint, defendant knew of the purchase contract and of the buyer's "intent . . . to install a new home," though the complaint does not specify when defendant gained that knowledge.

---

[1] Given the procedural posture of this case, the facts are drawn from the complaint, its exhibits, and documents that the trial court judicially noticed.

*Buyers' Installation Request; Defendant's Response*

In April 2007, acting as the buyer, Rotter sought defendant's signature on a plot plan and mobilehome installation permit, as required by California's Department of Housing and Community Development (HCD). According to the complaint: "Except for certifying that the lot lines contained in the Plot Plan and Installation Permit are correct," applicable law "does not require, or allow, the park owner to grant or withhold . . . approval for the placement of the mobilehome on its lot or for the issuance of the . . . HCD permit to occupy the mobilehome. . . ." The complaint further asserts that "HCD has promulgated the exclusive statewide setback and siting standards for the placement of mobilehomes on their lots . . . throughout California."

By letter dated June 7, 2007, attached as an exhibit to plaintiff's complaint, the buyers' attorney told defendant that its "installation requirements" were "unlawful." In the words of the letter: "You are not permitted to attempt to implement your own stricter standards nor are you permitted to require that the installation of the mobilehome go through your own approval process, as you have attempted."

In mid-June 2007, the complaint alleges, defendant "wrote a letter refusing to sign Rotter's mobile home Plot Plan and Installation Permit Application" and "instead setting forth new 'Park Rules'. The Park Rules . . . contain setback or placement requirements that are in addition to, exceed, or are more stringent" than those provided in pertinent HCD regulations.

Meanwhile, between March 22, 2007 (the date of the purchase contract), and June 7, 2007 (the date of the attorney's letter), defendant's agent contacted a competitor of the buyers "in an attempt to gain her assistance to purchase the old mobile home . . . from plaintiff, for defendant's sole benefit and profit" at a lower price than the buyers had offered. Defendant's intent was to prevent "anyone else but defendant from purchasing the old mobile home at space #37 from plaintiff by imposing unreasonable 'new' rules and regulations on any prospective purchaser if other than defendant."

In January 2008, the complaint alleges, "defendant began erecting a 12 foot tall fence adjacent to plaintiff's mobilehome at space #37 in the Park in order to strip plaintiff of the view and desirability of the common area open space adjacent to space #37."

## PROCEDURAL HISTORY

*Complaint*

In February 2008, plaintiff filed his complaint in this action. It enumerates six causes of action: (1) "Breach of Statute (the California Mobilehome Residency Law)"; (2) injunctive and declaratory relief that defendant cannot usurp HCD's exclusive authority; (3) injunctive and declaratory relief that defendant cannot enforce setback or size regulations that conflict with HCD regulations; (4) "Intentional Interference With Economic Relationship"; (5) "Negligent Interference With Economic Relationship"; and (6) "Breach of Contract (Breach of Duty of Good Faith and Fair Dealing)."

*Demurrer; Judicial Notice Requests; Response*

In April 2008, defendant demurred to the complaint on the ground that it failed to state a cause of action. Defendant also asked the court to take judicial notice of four documents. The first two represent the results of title searches, which show that plaintiff holds title to two mobilehomes in the park: the older mobilehome at space 37 and another one at space 33. The other two documents in defendant's judicial notice request are HCD regulations.

Plaintiff opposed the demurrer. He did not object to the request for judicial notice, however. Nor did he seek leave to amend his complaint.

Defendant replied to plaintiff's opposition. Defendant also submitted a supplemental request for judicial notice of three documents from a "companion" suit against defendant arising out of the same transaction, brought by the buyer, Rotter. In addition, defendant filed a "notice of exhibits" in opposition to any request by plaintiff for leave to amend. Appended to that document were three letters purportedly exchanged between the parties.

Plaintiff objected both to the supplemental request for judicial notice and to the notice of exhibits.

*Hearing and Decision*

In May 2008, the court conducted a hearing on the demurrer. The court announced that its "tentative ruling would be to sustain the demurrer without leave to amend." The court explained its reasons in some detail.

The court also addressed defendant's requests for judicial notice. The court first noted that defendant's initial request was unopposed. It granted that request. The court then took up defendant's supplemental request for judicial notice of documents from the companion case. The court denied that request, but it nevertheless commented that the subject documents "could be utilized for determining whether . . . leave to amend[] should be granted or not."

After discussing the judicial notice requests, the court entertained argument on the demurrer. Thereafter, the court adopted its tentative ruling, sustaining the demurrer without leave to amend.

In June 2008, the court filed a formal order consistent with its oral ruling, sustaining the demurrer without leave to amend. In July 2008, the court entered a judgment of dismissal.

*Appeal*

This appeal followed. As noted above, plaintiff makes four appellate claims: (1) the court erred by failing to treat his well-pleaded factual allegations as true; (2) the court erred by failing to recognize the preemptive effect of the Mobilehome Residency Law; (3) the court erred in relying on defendant's internal rules, which were not promulgated according to law; and (4) the court abused its discretion in failing to grant leave to amend.

## DISCUSSION

To establish the proper framework for our analysis, we begin by summarizing the pertinent statutory issues and the law governing demurrers. We then apply those principles to the case before us.

I. *Legal Principles*

A. *Mobilehome Law*

Various statutory and administrative provisions govern mobilehomes and mobilehome tenancies.

### 1. *Mobilehome Parks Act: Statute and Regulations*

Mobilehome park construction and operation are governed by the Mobilehome Parks Act (MPA), which is codified at Health & Safety Code section 18200 et seq. (*County of Santa Cruz v. Waterhouse* (2005) 127 Cal.App.4th 1483, 1489 [26 Cal.Rptr.3d 543].)

The HCD has promulgated regulations under the MPA, which are found in title 25 of the California Code of Regulations (Title 25) at section 1000 et seq. One of the regulations addresses approval for new mobilehome installation, stating in pertinent part: "Park operator approval is required with all applications for a permit to install an MH-unit, or to alter an MH-unit located in a park, if the alteration would affect the electrical, fuel gas or plumbing system of the park." (Cal. Code Regs., tit. 25, § 1032, subd. (d).) Another regulation provides for minimum setbacks on lots in mobilehome parks. (*Id.*, § 1330.)

### 2. *Mobilehome Residency Law*

Mobilehome tenancies in mobilehome parks are governed by the Mobilehome Residency Law (MRL), codified at Civil Code section 798 et seq.[2] "Ordinarily, mobilehome park tenants own their homes but rent the spaces they occupy." (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 109 [3 Cal.Rptr.3d 429].) "The protections afforded by the [MRL] reflect legislative recognition of the unique nature of mobilehome tenancies." (*Ibid.*)

The MRL begins with general provisions (§§ 798–798.14). It then covers such topics as rental agreements (§§ 798.15–798.22), park rules and regulations (§§ 798.23–798.29.6), and ownership transfers (§§ 798.70–798.83). Through these and its other provisions, the MRL "regulates relations between the owners and the residents of mobilehome parks." (*Cacho v. Boudreau* (2007) 40 Cal.4th 341, 345 [53 Cal.Rptr.3d 43, 149 P.3d 473].)

## B. *Principles of Statutory Construction*

### 1. *Statutes*

"In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute."

---

[2] Unspecified statutory references are to the Civil Code.

The MRL is contained in the Civil Code, division 2, part 2, title 2, chapter 2.5, articles 1 through 9.

(*Estate of Griswold* (2001) 25 Cal.4th 904, 910 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) " 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' " (*Id.* at p. 911.) As a general rule of statutory construction, "where possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." (*People v. McCart* (1982) 32 Cal.3d 338, 342 [185 Cal.Rptr. 284, 649 P.2d 926].) "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Estate of Griswold*, at p. 911; see also, e.g., *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 976–977 [11 Cal.Rptr.3d 45].)

### 2. *Regulations*

█ "Generally, the same rules of construction and interpretation which apply to statutes govern the interpretation of rules and regulations of administrative agencies." (*California State Restaurant Assn. v. Whitlow* (1976) 58 Cal.App.3d 340, 344 [129 Cal.Rptr. 824].) "The fundamental rule of interpretation is to ascertain the intent of the agency issuing the regulation so as to effectuate the purpose of the law." (*Brewer v. Patel* (1993) 20 Cal.App.4th 1017, 1021 [25 Cal.Rptr.2d 65].) "In order that legislative intent be given effect," a regulation, like a statute, "should be construed with due regard for the ordinary meaning of the language used and in harmony with the whole system of law of which it is a part." (*California State Restaurant Assn. v. Whitlow*, at p. 347.)

## C. *Demurrers*

"A general demurrer searches the complaint for all defects going to the existence of a cause of action and places at issue the legal merits of the action on assumed facts." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].) On appeal from the sustaining of a demurrer without leave to amend, the reviewing court is faced with two questions: the sufficiency of the pleading and the pleader's ability to amend.

### 1. *Sufficiency of the Pleading*

To assess the pleading's sufficiency, "we independently review the complaint to determine whether the facts alleged state a cause of action under any possible legal theory." (*Berger v. California Ins. Guarantee Assn* (2005) 128 Cal.App.4th 989, 998 [27 Cal.Rptr.3d 583]; see *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 986 [74 Cal.Rptr.3d 47].) We will affirm "if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord, supra*, 31 Cal.3d at p. 324.) On appeal, "the plaintiff bears the burden of demonstrating that the trial court erred" in

sustaining the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151].)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; accord, *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) In addition to the complaint's allegations, we consider matters that must or may be judicially noticed. (*Blank v. Kirwan*, at p. 318; *Schifando v. City of Los Angeles*, at p. 1081; Code Civ. Proc., § 430.30.) We also consider the complaint's exhibits. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 [272 Cal.Rptr. 623]; *108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 193 [38 Cal.Rptr.3d 589].) Under the doctrine of truthful pleading, the courts "will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824].) "False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . ." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 397, p. 536; see also *id.*, § 431, p. 564; *id.*, § 440, p. 572.)

In undertaking our independent review, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318; see *Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

### 2. *Amendment of the Pleading*

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

"As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to

sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329]; see also, e.g., *Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th at p. 39; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [27 Cal.Rptr.3d 661, 110 P.3d 914].) "Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* at p. 459.)

In analyzing liability under the governing substantive law, "we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) Where the issue of substantive law presents a question of statutory interpretation, our review likewise is de novo. (*Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 578 [18 Cal.Rptr.3d 412].)

## II. *Analysis*

As just explained, our analysis of the demurrer ruling proceeds in two steps. First, we independently review the sufficiency of plaintiff's complaint, addressing its six causes of action category by category. Next, we consider whether leave to amend should have been granted. As we explain below, after undertaking both steps in the analysis, we conclude that the trial court acted properly in sustaining defendant's demurrer without leave to amend.

### A. *The Complaint Fails to State a Cause of Action for Statutory Violation*

#### 1. *Background*

In arguments below, the parties disagreed about application of the MRL.

Plaintiff relied on section 798.25, which sets forth procedural requirements for amendments to mobilehome park rules. Plaintiff asserted that defendant failed to follow those procedures in promulgating its siting and setback requirements for the installation of new mobilehomes in the park.

Defendant relied on section 798.78. That provision recognizes that an "heir" who inherits a mobilehome from a "homeowner" has "the right to sell the mobilehome" under conditions set forth in the MRL. (§ 798.78, subd. (a).) But the provision further states: "In the event the mobilehome is to be replaced, the replacement mobilehome shall also meet current standards of the park as contained in the park's most recent written requirements issued to

prospective homeowners." (§ 798.78, subd. (c).) According to defendant, under this statute as applied to space 37, plaintiff is not a "homeowner" but instead is an "heir" and thus subject to the park's current standards, as reflected in its written guidelines for obtaining approval of new mobilehome installations after January 1, 2007.

The trial court agreed with defendant. In its formal order of June 2008, the court stated that it "must analyze the guidelines attached to the Plaintiff's complaint under Civil Code Section 798.78, rather than Civil Code Section 798.25."

On appeal, the parties continue to press the statutory arguments that they presented below. Furthermore, according to plaintiff, the complaint raises a factual issue about when the written guidelines were instituted, which the court improperly resolved against him. In addition, plaintiff urges, defendant's siting and setback rules are preempted, because they are in conflict with applicable state law regulations.

### 2. The Statutory Provisions

In part, at least, the parties' arguments over application of the MRL turn on the proper characterization of plaintiff's status as either a "homeowner" or an "heir." Depending on that status, different portions of the MRL apply.

■ Article 1 of the MRL applies generally. It contains a number of statutory definitions. (§§ 798.2–798.12.) As relevant here, "homeowner" is defined as "a person who has a tenancy in a mobilehome park under a rental agreement." (§ 798.9.) "Heir" is not specifically defined for purposes of the MRL.

■ Article 3, "Rules and Regulations," sets forth procedures that govern park management's activities vis-à-vis *homeowners*. Among those provisions is section 798.25.[3] As the express terms of that section indicate, park management must "meet and consult with the homeowners in the park"

---

[3] Section 798.25 provides in full as follows:

"(a) Except as provided in subdivision (d), when the management proposes an amendment to the park's rules and regulations, the management shall meet and consult with the homeowners in the park, their representatives, or both, after written notice has been given to all the homeowners in the park 10 days or more before the meeting. The notice shall set forth the proposed amendment to the park's rules and regulations and shall state the date, time, and location of the meeting.

"(b) Except as provided in subdivision (d) following the meeting and consultation with the homeowners, the noticed amendment to the park's rules and regulations may be implemented, as to any homeowner, with the consent of that homeowner, or without the homeowner's

concerning proposed amendments. (§ 798.25, subd. (a).) A "noticed amendment to the park's rules and regulations may be implemented" with the consent of an affected "homeowner, or without the homeowner's consent upon written notice of not less than" the specified statutory periods. (*Id.*, subd. (b).) As the quoted language reflects, this provision is aimed at park rule amendments affecting *homeowners* as statutorily defined.

 Article 7, entitled "Transfer of Mobilehomes and Mobilehome Parks," governs ownership transfers. That article includes section 798.78.[4] That

consent upon written notice of not less than six months, except for regulations applicable to recreational facilities, which may be amended without homeowner consent upon written notice of not less than 60 days.

"(c) Written notice to a homeowner whose tenancy commences within the required period of notice of a proposed amendment to the park's rules and regulations under subdivision (b) or (d) shall constitute compliance with this section where the written notice is given before the inception of the tenancy.

"(d) When the management proposes an amendment to the park's rules and regulations mandated by a change in the law, including, but not limited to, a change in a statute, ordinance, or governmental regulation, the management may implement the amendment to the park's rules and regulations, as to any homeowner, with the consent of that homeowner or without the homeowner's consent upon written notice of not less than 60 days. For purposes of this subdivision, the management shall specify in the notice the citation to the statute, ordinance, or regulation, including the section number, that necessitates the proposed amendment to the park's rules and regulations.

"(e) Any amendment to the park's rules and regulations that creates a new fee payable by the homeowner and that has not been expressly agreed upon by the homeowner and management in the written rental agreement or lease, shall be void and unenforceable."

[4] Section 798.78 provides as follows:

"(a) An heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death shall have the right to sell the mobilehome to a third party in accordance with the provisions of this article, but only if all the homeowner's responsibilities and liabilities to the management regarding rent, utilities, and reasonable maintenance of the mobilehome and its premises which have arisen since the death of the homeowner have been satisfied as they have accrued pursuant to the rental agreement in effect at the time of the death of the homeowner up until the date the mobilehome is resold.

"(b) In the event that the heir, joint tenant, or personal representative of the estate does not satisfy the requirements of subdivision (a) with respect to the satisfaction of the homeowner's responsibilities and liabilities to the management which accrue pursuant to the rental agreement in effect at the time of the death of the homeowner, the management shall have the right to require the removal of the mobilehome from the park.

"(c) Prior to the sale of a mobilehome by an heir, joint tenant, or personal representative of the estate, that individual may replace the existing mobilehome with another mobilehome, either new or used, or repair the existing mobilehome so that the mobilehome to be sold complies with health and safety standards provided in Sections 18550, 18552, and 18605 of the Health and Safety Code, and the regulations established thereunder. In the event the mobilehome is to be replaced, the replacement mobilehome shall also meet current standards of the park as contained in the park's most recent written requirements issued to prospective homeowners.

section specifically applies to an "heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death . . . ." (§ 798.78, subd. (a).) Thus, as relevant to this appeal, article 7 applies to heirs and other successors in interest, as distinct from homeowners.

### 3. *Application*

#### a. *Section 798.78 governs here.*

Applying the foregoing provisions to the facts as pleaded, we reach the same conclusion as the trial court: the governing provision is section 798.78, which applies to heirs. Plaintiff alleges that he is "the heir" of his mother with respect to space 37, pursuant to her rental agreement with defendant. As an heir under the governing provision, his proffered "replacement mobilehome" is required to "meet current standards of the park as contained in the park's most recent written requirements issued to prospective homeowners." (§ 798.78, subd. (c).)

#### b. *The procedural requirements of section 798.25 do not apply.*

In asserting his statutory violation claims, plaintiff argues that defendant was required to satisfy the procedural requirements of section 798.25 in considering whether to accept a replacement mobilehome under section 798.78. We reject that argument. As a matter of statutory interpretation, we see no basis for importing the requirements of that first provision into the second. We offer two reasons.

■ First, as explained above, the two provisions appear in two different articles of the MRL, with each article apparently directed at a different aspect of mobilehome park tenancies. That structure is suggestive of legislative intent to differentiate the two articles' requirements. (*In re Mark B.* (2007) 149 Cal.App.4th 61, 76 [56 Cal.Rptr.3d 697] [the "internal organization of a code may aid in understanding a statute's purpose . . ."].)

"In addition to the difference in their function, the language of" the two provisions "is manifestly different." (*People v. Jones* (1988) 46 Cal.3d 585, 595 [250 Cal.Rptr. 635, 758 P.2d 1165].) The Legislature's use of the words "standards" and "written requirements" in section 798.78 contrasts with its use of the phrase "rules and regulations" in section 798.25. "Of course, when

---

"(d) In the event the heir, joint tenant, or personal representative of the estate desires to establish a tenancy in the park, that individual shall comply with those provisions of this article which identify the requirements for a prospective purchaser of a mobilehome that remains in the park."

*different* words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended." (*Jones*, at p. 596.) Here, the two provisions appear in separate sections, enacted a year apart. (§ 798.25 [added by Stats. 1978, ch. 1033, § 10, p. 3188]; § 798.78 [added by Stats. 1979, ch. 198; § 1, p. 437].) But they were amended together in 1982, to substitute the term "homeowner" for "tenant." (§ 798.25 [amended by Stats. 1982, ch. 1397, § 8, p. 5321]; § 798.78 [amended by Stats. 1982, ch. 1397, § 32.5, p. 5328].) The Legislature nevertheless employed distinct terms in each provision.

■ Given this statutory structure and language choice, we infer that the Legislature did not intend to equate a park's "current standards" and "most recent written requirements" under section 798.78 with its "rules and regulations" under section 798.25. We further infer a legislative intent to treat "heirs" and "homeowners" differently with respect to the standards and rules implemented by park management. Given the distinctions between the two provisions, there is no basis for grafting the procedural requirements of section 798.25 onto section 798.78.

c. *The court did not improperly disregard plaintiff's allegations.*

We also reject plaintiff's argument that the court erred in its treatment of his factual allegations on this point. According to plaintiff, had the court deemed true his "well-pleaded allegations that [defendant's] mobile home park rules were promulgated **after** [plaintiff] made arrangements to sell the mobile home on lot 37 and replace it with a new mobile home," the court "properly" would have overruled the demurrer. We reject this argument for two reasons.

First, contrary to plaintiff's appellate contention, his complaint does not include any "well-pleaded allegations" that defendant's written guidelines postdated plaintiff's contract to sell the older mobilehome. The complaint makes no mention of when the written guidelines were promulgated. The only reference to the guidelines' origination or timing is the complaint's use of the adjective "new" to describe them.[5]

■ Second, even if such an allegation had been or could be made, the governing statute requires replacement mobilehomes to "meet *current standards* of the park as contained in the park's *most recent written requirements* issued to prospective homeowners." (§ 798.78, subd. (c), italics added.) Here,

---

[5] According to one allegation of the complaint, defendant "wrote a letter refusing to sign" the buyers' installation permit application and "instead setting forth new 'Park Rules.'" Another allegation accuses defendant of "imposing unreasonable 'new' rules and regulations on any prospective purchaser if other than defendant."

plaintiff does not assert or even suggest that defendant's written guidelines, effective January 1, 2007, did not reflect its "current standards" as that term is used in the statute.

> d. *Plaintiff's substantive challenge to the written guidelines is unavailing.*

Plaintiff argues that defendant's written guidelines are in conflict with state regulatory law, which preempts them. We reject that argument for two reasons.

First, plaintiff's claims against defendant do not implicate preemption principles, which come into play when state legislation fully occupies a field, thereby preventing regulation by local government. (See, e.g., *County of Santa Cruz v. Waterhouse, supra,* 127 Cal.App.4th at pp. 1489–1490.) This case concerns the policies promulgated by a *private* mobilehome park, not regulation imposed by a *governmental* entity.

Second, the challenged written guidelines are not in conflict with the cited state regulation, California Code of Regulations, title 25, section 1330.[6] That regulation calls for *minimum* setbacks from lot lines in mobilehome parks. (Cal. Code Regs., tit. 25, § 1330; *Qualls v. Lake Berryessa Enterprises, Inc.* (1999) 76 Cal.App.4th 1277, 1286 [91 Cal.Rptr.2d 143].) Nothing in the regulation prohibits park operators from requiring greater setbacks or more stringent siting requirements. Indeed, another portion of the regulation (inapplicable here) contains a contrary suggestion, expressly recognizing that mobilehomes "installed outside of parks shall comply with local requirements

---

[6] That regulation states:

"(a) In parks, or portions of parks, constructed prior to September 15, 1961, units shall not be located closer than six (6) feet from any permanent building or another unit.

"(b) In parks, or portions of parks, constructed on or after September 15, 1961, minimum separation distance shall be as follows:

"(1) from a unit to any permanent building, not less than ten (10) feet.

"(2) from a unit to any other unit, not less than:

"(A) ten (10) feet from the side of one unit to the side of an adjacent unit;

"(B) eight (8) feet from the side of one unit to the front or rear of an adjacent unit; and

"(C) six (6) feet from the front or rear of one unit to the front or rear of an adjacent unit.

"(c) A minimum setback of three (3) feet shall be maintained from the unit or the unit's projection or eave overhang and the adjacent lot line or property line. However, a unit may be installed up to a park roadway or common area provided there is no combustible building or structure in the common area within six (6) feet, and no building or structure of any kind within three (3) feet, of any portion of the unit. The maximum seventy-five percent (75%) lot coverage allowed by section 1110 of this chapter shall be maintained. Projections or eave overhangs shall not extend beyond a lot line bordering a roadway or common area.

"(d) Unit projections or eave overhangs may intrude into the minimum distances required for separation, where separation requirements between units, as defined in subsection (b) of

for setbacks and separations"—albeit with the proviso that such units "shall not be required to have greater setbacks or separation than other similar dwellings within the local agency's jurisdiction." (Cal. Code Regs., tit. 25, § 1330, subd. (f).) Because section 1330 of the HCD regulations provides for minimum setbacks only, we find no basis for invalidating mobilehome park siting requirements that exceed the regulation's requirements, at least so long as they are uniformly applied. Applying that conclusion to the facts alleged here, defendant's written guidelines do not offend the regulation.

### 4. *Conclusion*

◼ Applying the governing statute to the facts (as reflected in the complaint, its exhibits, and judicially noticed matter), the first three causes of action fail. For the reasons explained above, there is no statutory violation as claimed in the first cause of action. Under the governing provision, any "replacement mobilehome" proffered by an *heir* must "meet current standards of the park as contained in the park's most recent written requirements issued to prospective homeowners." (§ 798.78, subd. (c).) Conversely, the statutory requirements for amending park rules that affect *homeowners* do not apply. (§ 798.25.) Since the second and third causes of action for declaratory and injunctive relief depend on the asserted statutory violation, they likewise fail.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. *The Court Did Not Abuse Its Discretion in Denying Leave to Amend.*

"Whether to grant leave to amend a complaint is a matter within the discretion of the trial court." (*Reynolds v. Bement* (2005) 36 Cal.4th 1075,

---

this section, are greater than six (6) feet, provided not less than a six (6)-foot separation is maintained between the edge of any unit projection or eave overhang, and an adjacent unit, permanent building, or combustible accessory building or structure and its projection, or eave overhang.

"(e) Lot lines shall be identified as prescribed by section 1104.

"(f) Units installed outside of parks shall comply with local requirements for setbacks and separations and shall not be required to have greater setbacks or separation than other similar dwellings within the local agency's jurisdiction.

"(g) Setback and separation requirements for accessory buildings and structures or building components are contained in section 1428 of Article 9." (Cal. Code Regs., tit. 25, § 1330.)

*See footnote, *ante,* page 390.

1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) Where leave to amend has been denied, it is the plaintiff's burden to demonstrate a reasonable possibility that the complaint's defects can be cured by amendment. (*Ibid.*) In this case, plaintiff has failed to carry that burden.

Given applicable substantive law, plaintiff cannot amend his complaint to state any claim that depends on his assertion of a statutory violation. Plaintiff relies exclusively on section 798.25, which sets forth the procedural requirements for amending park rules that affect homeowners. But as explained above, that section does not apply to plaintiff in his capacity as an heir to the mobilehome at space 37 of defendant's park. Under the provision that does apply, a replacement mobilehome must satisfy the park's current standards. (§ 798.78, subd. (c).) Plaintiff offers no suggestion as to how his complaint could be amended to state a cause of action for violation of the governing statutory provision. And as explained above, "where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 68 Cal.App.4th at p. 459.) On this basis, denial of leave to amend was proper as to the first, second, and third causes of action of plaintiff's complaint.

As for the tort and contract claims contained in the fourth, fifth, and sixth causes of action, they too depend on plaintiff's statutory violation claim, at least in part. Moreover, to the extent that those claims may exist independently, plaintiff has failed to carry his burden of showing a reasonable possibility that the defects in those causes of action could be cured by amendment. (*Reynolds v. Bement, supra,* 36 Cal.4th at p. 1091.)

Finally, we observe, plaintiff apparently chose to stand on his complaint. After defendant demurred to the complaint, plaintiff did not request leave to amend, either in his opposition papers or during argument at the hearing. To the contrary, in plaintiff's objection to defendant's notice of exhibits, he flatly stated: "Plaintiff did not request leave to file an amended complaint." "The failure to amend and state a cause of action against defendant is an admission that plaintiff has stated the case as strongly as he can and there are no facts that could be alleged to cure the defect." (*Cano v. Glover* (2006) 143 Cal.App.4th 326, 330 [48 Cal.Rptr.3d 871]; see *Reynolds v. Bement, supra,* 36 Cal.4th at p. 1091.)

For these reasons, we find no abuse of discretion in the trial court's decision to sustain the demurrers without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Defendant shall have costs on appeal.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.