Filed 3/4/14  Danney v. Hopper CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEVEN T. DANNEY, | |
| Plaintiff and Appellant, | E054840 |
| v. | (Super.Ct.No. INC10003676) |
| GARY L. HOPPER et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Randall Donald White, Judge.  Affirmed.

Rosenberg, Shpall & Associates, David Rosenberg, Jeremy H. Danney, and Amy C. Lea for Plaintiff and Appellant.

Joseph A. Gibbs, Attorney at Law and Joseph A. Gibbs for Gary L. Hopper, D.D.S. and Gary L. Hopper, D.D.S., P.C., Defendants and Respondents.

Gordon & Rees, Gary J. Lorch and Elizabeth B. Vanalek for Mercer Advisors, Inc., Defendant and Respondent.

1

Plaintiff and Appellant Steven T. Danney, D.D.S. (Danney) sought to purchase a dental practice (the Practice) owned by Defendants and Respondents Gary L. Hopper, D.D.S and Gary L. Hopper, D.D.S., P.C. (Hopper). Defendant and Respondent Mercer Advisors, Inc. (Mercer), an organization that specialized in assisting dentists in all aspects of their dental practices, prepared a letter of intent (LOI) that memorialized the terms of the sale after Hopper and Danney orally agreed on the terms. Danney began working at the Practice.

Hopper backed out of the deal and fired Danney. Danney filed an original complaint against Hopper claiming that he wrongfully terminated the sale of the Practice, and that Mercer had breached its fiduciary duty and committed professional negligence by advising Hopper to terminate the sale. The demurrers to the complaint were granted because the trial court concluded that the complaint was based on a breach of the LOI, the LOI included language that it was non-binding, and Mercer was only acting as a middleman, not Danney's agent. Thereafter, Danney alleged in his first, second, and third complaints that Hopper had actually breached their agreement to negotiate in good faith, and he was entitled to reliance damages. Danney continued to allege that Mercer was acting as his consultant, not a middleman. The trial court granted the demurrers to the first and second amended complaints with leave to amend, but sustained the demurrers to the third amended complaint without leave to amend.

Danney essentially claims on appeal that the trial court erred by sustaining the demurrers to the third amended complaint without leave to amend because a cause of action under *some* legal theory was pleaded in the complaints.

2

# I

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Original Complaint*

Danney had been a board certified dentist in California since 1978, but practiced in Maine from 1996 to 2007.[1]  Mercer is a corporation that specializes in assisting dentists nationwide in all aspects of their practice, business planning, and sales of practices.  In 2004, Danney retained Mercer as financial consultants.  In July 2007, Danney sold his dental practice in Maine and moved to California.  The practice was sold as a 1031 tax exchange and he needed to purchase another practice to defer taxes on the sale.  Mercer advised Danney that Riverside County had a good market for dental practices.  Danney moved to Riverside County in August 2007.

In September 2007, Mercer advised Danney that Hopper was interested in selling the Practice.  On October 5, 2007, Hopper, Danney and a representative from Mercer met regarding the terms of the sale of the Practice.  "They arrived at an agreement regarding the terms of the sale."  Danney informed Hopper and Mercer that he needed the 1031 exchange.

On October 15, 2007, Danney commenced working at the Practice.  It was "agreed" that during this time Danney would receive a base salary of $80,000 and 100 percent of the profits above the profits received for the same month the prior year. Danney purchased a home near the Practice.

---

[1]  The alleged facts are derived from the original complaint and any additional facts provided in the subsequent complaints will be added later.

The LOI was signed by both parties on February 19, 2008. It summarized the terms of the oral agreement reached on October 5, 2007. It was attached as an exhibit to the complaint. Mercer was to act as the dual representative of Hopper and Danney. Mercer commenced drafting the formal sale documents based upon the terms of the LOI. Danney encountered some problems with receiving a loan to buy the Practice. Mercer and Hopper were aware that Danney was trying to fix the loan problems.

On April 21, 2008, Danney received an email from Mercer on behalf of Hopper stating that if the loan was not obtained by April 30, 2008, the sale would be cancelled. Hopper met with Danney and extended the loan commitment to May 15, 2008. However, unexpectedly, on the morning of April 29, 2008, Hopper met Danney in the parking lot of the Practice and told Danney he was fired, and that he would not sell the Practice to him.

On April 27, 2010, Danney filed his complaint for breach of contract. He alleged that he resided in Riverside County and that the Practice was in Riverside County.

As for the first cause of action in the complaint, Danney alleged a breach of contract action against Hopper. Danney alleged that on or about October 5, 2007, they entered into an oral agreement for the sale of the Practice to Danney. It was alleged that the agreement was later memorialized in the written LOI. Danny at all times performed within the terms of the LOI. On or about April 29, 2008, Hopper breached the LOI by terminating Danney's employment at the Practice and cancelling the sale of the Practice. Hopper failed to perform and continued to fail to perform any of the promises or representations made by the LOI. Danney also alleged that as a direct and proximate result of Hopper's failure to perform according to the promises and representations of the

4

LOI, he was damaged because he did not receive the agreed upon profits over his salary; he had a failed tax exchange; he purchased a residence near the Practice; Danney invested funds in Hopper's Practice; and he had other damages.

The second cause of action alleged breach of implied covenant of good faith and fair dealing against Hopper. Danney alleged that on April 29, 2008, Hopper breached the covenant of good faith and fair dealing by canceling the LOI and terminating Danney's employment. He alleged the same damages as in the first cause of action.

For the third cause of action, Danney alleged he was entitled to an accounting from Hopper. Danney was employed at the Practice from October 15, 2007 through April 29, 2008. Based on the "oral and written agreement" between Danney and Hopper, he was to receive a salary of $80,000 and 100 percent of the profits that exceeded the profits at the same time for that month in the previous year. Danney had demanded an accounting of the profits but had not received it and had been paid nothing pursuant to this "oral and written agreement."

The fourth cause of action alleged professional negligence against Mercer. Danney alleged that he employed Mercer as a financial and business consultant. Mercer represented both Danney and Hopper in the sale of the Practice. Mercer drew up the LOI and started drafting the final sales documentation. They also advised Danney on his 1031 exchange. Danney relied on Mercer's advice. Mercer failed to acknowledge the inherent conflict of its dual representation of Hopper and Danney. Mercer advised Hopper to cancel the sale of the Practice, which resulted in damage to Danney.

The final cause of action alleged breach of fiduciary duty by Mercer. Mercer represented Danney in the sale of the dental Practice in addition to the 1031 exchange. Danney relied upon Mercer's representations and advice during the course of the transaction. Mercer owed a fiduciary duty to Danney which it breached by advising Hopper to cancel the transaction.

In his prayer for relief, Danney requested compensatory damages, accounting of the profits and payment to him in the amount determined under the agreement, 10 percent interest on the profits, general damages, and costs of suit.

The language of the LOI included that it was a "non-binding document" to be used as a foundation of the formal purchase and sale agreements. The LOI outlined that Danney would initially buy 20 percent of the Practice (through a loan of $200,000 and to be completed by January 28, 2008) and then buy the remaining 80 percent (by loan of $800,000 and to be completed by December 31, 2008). Danney was to make $180,000 as salary. Danney was to receive a bonus equal to the amount of net profits of the Practice in excess of $415,000 (after his $180,000 salary). It was clear that Mercer was going to draft all of the closing sale documents. The LOI included that "Mercer Transitions strives to balance each of Hopper and Danney's interests to structure a deal that provides the maximum benefit to Hopper and Danney." The parties were advised to obtain their own financial and legal advisors at their own expense. Mercer's fees were to be shared equally between Hopper and Danney.

B.    *Demurrers to Complaint*

As for the first cause of action, Hopper complained that it was unclear as to which agreement that the breach of contract claim was based.  The complaint referred to the LOI; an agreement made in Arizona on October 5, 2007 with a Mercer representative; and an agreement wherein Danney would receive a $80,000 base salary plus profits. Hopper also pointed out that the LOI was non-binding.  Danney could not sue on a non-binding agreement.

The second cause of action required as to termination of Danney's employment a valid employment contract.  The complaint was not clear on what contract existed and the terms of the contract.  The LOI was non-binding and could not form the basis of an employment agreement or contract to sell the dental Practice.

For the third cause of action, the specific oral and written agreement that he would receive 100 percent of the profits received by the Practice was not identified.  The LOI was non-binding and did not contain this language.  No accounting was required.  Hopper concluded that the demurrer should be sustained and the matter dismissed without leave to amend.

Mercer filed its own demurrer.  After summarizing the allegations in the complaint, Mercer set forth elements of a cause of action for professional negligence and breach of fiduciary duty.

Mercer insisted that Danney was required not only to show that Mercer breached a duty to Danney, but that Mercer proximately caused his damage.  This was premised on Hopper being legally obligated to sell his Practice to Danney.  The LOI did not provide

as such. Without a legally binding agreement between Hopper and Danney, Mercer could not breach any duty. The LOI stated that Mercer represented both parties and Danney signed it. Mercer also claimed that it was merely a middleman in the transaction. There was no evidence Mercer negotiated the terms of the sale. Moreover, Danney waived any conflict by signing the LOI that specifically provided that Mercer was only a middleman.

        C.      *Danney's Opposition to the Demurrers*

On July 23, 2010, Danney filed an opposition to Hopper's demurrer. He claimed, "What Dr. Hopper misunderstands is that Dr. Danney is not alleging a breach of specific provision in a contract, but a breach by Dr. Hopper of his promise to negotiate the sale of his Practice to Dr. Danney." For the first time, Danney cited to *Copeland v. Baskin Robbins USA* (2002) 96 Cal.App.4th 1251 (*Copeland*). Danney argued that "[a] party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." Danney alleged that he and Hopper had an oral agreement, "thereafter summarized" in the LOI, to negotiate the terms for the sale of Hopper's dental Practice. Hopper terminated the sale and Danney's employment in bad faith.

On August 6, 2010, Danney filed an opposition to Mercer's demurrer. Danney stated that Hopper and Danney did have an agreement to negotiate in good faith the sale of the Practice. Further, claims for professional negligence and breach of fiduciary duty do not require a separate binding agreement. Danney contended that, "Although the [LOI] could not bind the parties to enforce the sale or purchase of the Practice, the parties specifically agreed in the [LOI] to use 'reasonable efforts to meet the schedule of completion [of the sale].'" Danney argued professional negligence in that Mercer advised Hopper not to sell the Practice to Danney and he suffered damages. Mercer was more than a middleman.

D.      *Reply to Opposition to Demurrers*

Hopper complained that it was not clear whether Danney was suing on the LOI or another oral agreement between the parties. Danney did not properly plead a contract upon which he was suing. Further, the LOI was non-binding. The complaint had said nothing about an additional agreement to negotiate or other contract. Mercer also filed a reply. They also argued that nowhere in the complaint did Danney identify the existence of an alleged agreement to negotiate in good faith. In addition, there was nothing further to negotiate. Mercer continued to deny that it was Danney's broker; it was a middleman.

E.      *Hearing on Complaint*

The demurrers were heard together on August 19, 2010.  At the hearing, Danney's counsel indicated that she had reviewed the tentative[2] which, according to counsel, stated as to the causes of action against Hopper that the LOI was not enforceable.  Danney's counsel argued that the complaint showed that the parties were in the middle of negotiations and had agreed to negotiate.  Based on *Copeland*, the parties had to negotiate in good faith.

Hopper's counsel referred to the language of the complaint that specifically stated that Hopper breached the LOI by canceling the sale of the Practice and terminating Danney's employment.  Mercer's counsel argued that there was no agreement to negotiate; the terms were agreed upon.

The trial court adopted the tentative ruling and gave Danney 30 days leave to amend.  According to the minute order for the hearing, the "First[,] Second and Third cause of action:  The [LOI] is not an enforceable contract because it is not intented [sic] to be binding by its express terms (*Beck v. American Health Group [Internat.,] Inc.* (1989) 211 Cal.App.3d 1555[,] 1536.)"  For Mercer, the minute order stated as follows: "Fourth and fifth causes of action:  These causes of action are also based on the [LOI] which plaintiff cannot enforce.  The allegations of the complaint and the terms of the [LOI] establish that defendant Mercer was only acting as a middleman to the transaction and not as plaintiff[']s agent."

---

**2**      This tentative does not appear in the record and does not appear on the register of actions.

F.     *First and Second Amended Complaints, Demurrers, and Hearing*

Danney filed his first amended complaint on September 17, 2010.  As for the breach of contract cause of action against Hopper, Danney now contended that "On or before October 5, 2007[,] Dr. Hopper and Dr. Danney entered into an oral agreement to negotiate, in good faith, the sale of Dr. Hopper's Practice to Dr. Danney (the 'Agreement')."  The general terms of the sale were memorialized in the LOI.  Danney alleged that specific terms of the sale had not been finalized, and pursuant to the Agreement, and memorialized in the LOI, they agreed to work in good faith to negotiate the final terms and documents necessary to finalize the sale and purchase of the Practice.  Hopper breached the Agreement by, in bad faith, terminating the negotiations related to the sale or purchase.  As for the second cause of action, Hopper breached the implied covenant of good faith and fair dealing in terminating all further negotiations regarding the sale of the Practice.  As for the third cause of action, there was an "agreement" between Hopper and Danney to pay him a base salary and profits.

As to Mercer, the fourth and fifth causes of action remained essentially the same.  Danney alleged three additional causes of action for intentional interference with prospective economic advantage, negligent interference with prospective economic advantage and intentional interference with contractual relations.

11

Mercer moved to strike the additional three allegations because Danney was not authorized to add the additional allegations.  Mercer also filed a demurrer.  Mercer again claimed that the causes of action were based on the unenforceable LOI, and that there was not a separate agreement to negotiate because the terms were already decided. Mercer was a middleman and nothing in the amended complaint changed that.

Hopper also brought a demurrer to the first amended complaint.  Hopper contended that Danney was changing the facts without explanation which was impermissible; Danney was attempting to change the facts from the LOI to an oral agreement to negotiate in good faith.  Danney had failed to express what terms still needed to be negotiated.

Danney filed an opposition to both demurrers.[3]  Danney again stated that Hopper and Danney had an agreement to negotiate in good faith.  There was a showing of professional negligence by Mercer advising Hopper to cancel the sale.  Mercer represented Danney in the transaction and no agreement was required.

Hopper and Mercer filed replies to the oppositions to the demurrers.  Hopper reiterated that an oral agreement to negotiate contradicted the complaint and that *Copeland* was not applicable because there was nothing left to negotiate.  Mercer again argued the LOI was unenforceable and could not be re-characterized as an agreement to negotiate.

---

[3]     Danney's opposition to Hopper's demurrer does not appear in the record but is not crucial to the determination in this case.

12

On December 3, 2010, Hopper's counsel appeared at the hearing and stated that they stipulated to the tentative ruling (which is not part of the record). According to the minute order, the trial court granted Mercer's motion to strike the new causes of action. Further, the fourth and fifth causes of action were subject to demurrer because they were "based upon inconsistent allegations regarding an oral contract." The trial court further found that Mercer was a middleman. As to the Hopper causes of action, the trial court ruled the allegations in the first amended complaint were inconsistent with the complaint and satisfactory explanation as to the inconsistencies was required. It appears that the third cause of action was allowed to proceed.

On January 3, 2011, Danney filed his second amended complaint. He again alleged as to the first cause of action that Hopper and Danney, on October 5, 2007, agreed to negotiate the terms and conditions of the sale of the Practice. Danney negotiated in good faith. The second and third causes of action remained the same. As for the fourth cause of action, Danney alleged that Mercer "so negligently and carelessly performed its duties" to cause Danney damages. As for the fifth cause of action, Mercer represented Danney in the purchase of the Practice and Danney relied upon its advice. There was no explanation as to the inconsistencies between the complaint and the second amended complaint regarding the characterization of the October 5, 2007 agreement.

Hopper filed his demurrer to the second amended complaint, raising the same objections as to the first amended complaint. Mercer also filed a demurrer. Mercer criticized Danney for ignoring the fact that the trial court had already found that Mercer was a middleman in the transaction and nothing was added that would change it. Danney

13

continued to fail to allege what terms still needed to be negotiated. Mercer contended the second amended complaint was merely a restatement of the first amended complaint that had already been rejected.

Danney filed oppositions to the demurrers. For the first time, he claimed that at all times the complaint, first amended complaint and second amended complaint supported a cause of action against Hopper for breach of an implied in fact contract. Danney claimed that if the second amended complaint was denied, he should have leave to file under this theory.

Hopper filed a reply to the opposition objecting to the new argument about an implied in fact contract. Hopper contended he could not argue an implied in fact contract because of the LOI.

On April 20, 2011, the matter was heard. Danney's counsel asked the trial court for guidance on the first and second causes of action. The trial court stated there was no satisfactory explanation as to why the complaint alleged an oral agreement to sell the Practice had been reached but the amended complaints stated that there was an agreement to negotiate. Danney's counsel asked for guidance on the fourth and fifth causes of action. The trial court referred Danney's counsel to the definition of agency. The trial court advised Danney that he was going to be given one last chance. As for the third cause of action, Danney's counsel argued there was a separate oral agreement as to Danney's employment. The trial court advised Danney's counsel that the claim needed to be clarified. The second amended complaint was sustained in its entirety with leave to amend.

14

G.     *Third Amended Complaint*

Danney filed the third amended complaint on May 20, 2011.  Danney stated as to the first cause of action that on or before October 5, 2007, Hopper orally agreed to sell the Practice.  However, they agreed to negotiate the terms and therefore he could not enforce the sale of the Practice.  However, additionally Hopper and Danney orally agreed to negotiate in good faith the specific terms of the sale of the Practice.  The LOI was evidence that the parties intended to continue to negotiate the terms of the sale.  To his detriment, Danney reasonably relied upon the promises to sell the Practice.  Hopper breached the agreement to negotiate in good faith.  The second cause of action again stated that by terminating all negotiations regarding the sale of the Practice, there was a breach of implied covenant of good faith and fair dealing.  As for the third cause of action, Danney claimed there was an oral employment agreement.  As for the fourth and fifth causes of action, they were identical to the first and second amended complaints.

Once again Hopper and Mercer filed demurrers.  Mercer criticized the third amended complaint for simply rehashing the same arguments.

Hopper contended for the first time that any argument that there was an enforceable oral agreement to negotiate was barred by the statute of limitations.  The breach of the oral agreement occurred on April 29, 2008, and Danney raised the issue for the first time on September 17, 2010, which was beyond the two-year statute of limitations.  This equally applied to any oral contract regarding employment.  Hopper also claimed that the same problems with the prior amended complaints still existed

15

including inconsistencies from the complaint and the failure to identify additional terms to negotiate.

Danney filed oppositions to Hopper's and Mercer's demurrers. As to the statute of limitations, the complaint was filed on April 27, 2010, and he had always alleged a failure to negotiate in good faith. Further, Danney argued that whether Mercer was a middleman or his agent was a jury question. Mercer filed a reply. Hopper filed a reply that the pleading of an oral agreement did not relate back to the filing of the complaint.

A hearing was held on August 12, 2011. The demurrers to the third amended complaint were sustained without leave to amend. A judgment for dismissal was entered. The order on the demurrers to the third amended complaint provided as follows: "The Third Amended Complaint alleged an unenforceable agreement to agree, not a contract to negotiate. Contracts to negotiate are distinguishable from unenforceable agreements to agree. A contract to negotiate is deemed performed if, despite their best efforts, the parties fail to agree on the issues remaining to be settled. A party will only be liable if the failure to agree on the remaining terms results from a breach of that party's obligation to negotiate in good faith. (*Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1257). Interalia, according to plaintiff Danney's own allegations, defendant walked away before a contract was executed. Mercer was engaged by both parties to draft documents and provide financial advice on the structuring of the deal. This is consistent with Mercer's alleged role as financial business consultant. Mercer was not a broker and did not owe any duties to Danney and Hopper regarding the sale other [than] those related to the drafting of the documents and provision of advice."

16

## II

## STANDARD OF REVIEW

"""""On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law."" [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the petition/complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]" (*San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 605-606.) "Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State* (2008) 161 Cal.App.4th 242, 247.) "It is error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory . . . ." (*Ibid.*)

## III

## FIRST AND SECOND CAUSES OF ACTION AGAINST HOPPER

As previously stated, Danney's first and second causes of action alleged against Hopper were breach of contract and breach of implied covenant of good faith and fair dealing. Danney contends on appeal that the causes of action are supported in that he was entitled to reliance damages based on his belief that Hopper agreed to negotiate in

good faith to sell the Practice to him. He insists he never claimed he could enforce the LOI because there were terms that continued to need negotiation. He claims he was not inconsistent in his pleadings.

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. [Citation.]" (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239.) As for the second cause of action, "The law implies in every contract a covenant of good faith and fair dealing, meaning that neither party will do anything which will injure the right of the other to receive the contract's benefits. [Citations.]" (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 929.)

Initially, we agree with the trial court's determination that Danney was seeking to enforce an agreement to agree (which is unenforceable) in the complaint, and there was nothing more to negotiate. The LOI clearly set out the terms of the sale and left nothing for the parties to negotiate. "Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded. . . .' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) The LOI clearly sets forth the terms of the sale, and provides nothing about further negotiations on key terms of the agreement. The exhibit contradicts Danney's claims; we

18

must rely on the LOI. Danney admitted in the complaint that the parties had agreed on the terms of the sale of the Practice. Moreover, Danney never alleged that there were further terms to be negotiated in the complaint or the amendments. There was nothing further to negotiate that would support Danney's claim that he was seeking to enforce the agreement to negotiate in good faith.

Unfortunately, the LOI was non-binding and Danney could not enforce the sale. He failed to request a remedy in the LOI should the sale not proceed. He cannot now claim that there was an oral agreement to negotiate in good faith. The LOI and pleadings simply do not support that there was an agreement to negotiate further on the sale of the Practice.

This case differs from *Copeland*. In *Copeland*, the parties entered into a written agreement whereby the plaintiff would purchase from the defendant an ice cream production plant. The parties agreed they would negotiate for a further agreement for the defendant to purchase ice cream from the plaintiff after the sale. The agreement was contingent upon defendant purchasing ice cream from plaintiff. However, the defendant later decided it would not enter into an ice cream purchase agreement under any terms and ended the negotiations. (*Copeland, supra,* 96 Cal.App.4th at pp. 1253-1254.) The plaintiff sued for breach of contract. (*Id.* at pp. 1254-1255.)

The *Copeland* court held "[a] contract to negotiate the terms of an agreement is not, in form or substance, an "agreement to agree." (*Copeland, supra,* 96 Cal.App.4th at pp. 1257-1258.) The court explained, if parties enter into such a contract and, "despite their good faith efforts, [they] fail to reach ultimate agreement on the terms in issue the

19

contract to negotiate is deemed performed and the parties are discharged from their obligations. Failure to agree is not, itself, a breach of the contract to negotiate. A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." (*Id.* at p. 1257, fns. omitted.)

Here, there were no other terms to negotiate. Since the LOI was unenforceable, and there was nothing to support there was an agreement to negotiate in good faith on other terms of the sale of the Practice, the trial court properly granted the demurrers without leave to amend because Danney could not establish a cause of action based on the termination by Hopper of the sale of the Practice. There was no breach of a contract because none existed that was enforceable.

Moreover, the theory that there was a good faith agreement to negotiate the sale contradicted the complaint. Ordinarily, it is an abuse of discretion to deny leave to amend if there is a "'reasonable possibility that the plaintiff can state a good cause of action. . . .'" (*Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 768.) Leave to amend is properly denied "when the proposed amendment omits or contradicts harmful facts pleaded in a prior pleading unless a showing is made of mistake or other sufficient excuse for changing the facts. Absent such a showing, the proposed pleading may be treated as a sham. [Citations.]" (*Ibid.*)

Here, Danney clearly stated in his complaint that the terms of the sale had been agreed upon by the parties and the LOI summarized the terms of the agreement. However, in his first amended complaint, Danney alleged that they had come to a

20

"general understanding" of the terms of the sale and the LOI was an agreement to negotiate the final terms; in the second amended complaint he claimed he understood that many specific terms of the agreement had not been finalized and that the LOI was just an agreement to negotiate; and in the third amended complaint he stated that they agreed on the general terms and timeline of the transaction, and the LOI was an agreement to negotiate the final terms of the sale. The allegations in the subsequent amendments (specifically, the third amended complaint) clearly contradicted the complaint. Danney never explained the contradiction. As such, the trial court could reject these claims in the amendments.

The trial court properly granted Hopper's demurrer to the first and second causes of action and denied leave to amend the claims.

IV

THIRD CAUSE OF ACTION

Danney claims on appeal that he is entitled to an accounting based on whether he is owed additional money "under the terms of his employment" with Hopper. He insists there was a separate "employment agreement" which entitled him to additional money based on his production while working at the Practice.

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)

21

Danney failed four times to establish there was an employment agreement between him and Hopper with the terms alleged by him. Danney initially stated in the complaint that there was an "oral and written" agreement that he would receive a salary of $80,000 and 100 percent profits for the month over what was made by the Practice the previous year during that month. However, attached to the complaint was the LOI which stated he will make a salary of $180,000 per year and he will receive a "bonus" equal to the net profits for the year. The exhibit to the complaint contradicted Danney's claim regarding the "oral and written" agreement. As stated, "[a]llegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . .' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC, supra,* 179 Cal.App.4th at p. 400.) The only agreement regarding employment shown by the complaint was the LOI, which we have already established was non-binding on the parties. As such, there was no "relationship" shown between Hopper and Danney that required an accounting.

Danney stated in his first, second and third amended complaints that he and Hopper "agreed" or there was an "agreement" that he would be paid $80,000 and receive 100 percent of the profits. However, he always attached the LOI as an exhibit. The LOI contradicts that there was another employment agreement on the terms pleaded by Danney. Based on the foregoing, the only employment agreement properly pleaded in the complaint and the amendments was that which was embodied in the LOI. By its terms, the LOI was unenforceable. No employment agreement existed that was enforceable against Hopper, and hence, Danney was not entitled to an accounting.

22

V

STATUTE OF LIMITATIONS

Even if there was an oral agreement regarding employment between Danney and Hopper, or an oral agreement to negotiate in good faith, Hopper's claim that the statute of limitations barred Danney from bringing the claims is well taken.

The statute of limitations for oral agreements is two years. (Code Civ. Proc., § 339, subd. (1).) Here, the oral agreements to which Danney refers were breached on April 29, 2008, when Hopper terminated Danney's employment and the sale of the Practice. Defendant filed his original complaint on April 27, 2010. The trial court considered that it was an action filed based on the unenforceable LOI, which was the written agreement signed by the parties. On September 27, 2010, he filed his first amended complaint alleging the oral agreements.[4]

Defendant contends that he had always alleged that his causes of action were based on Hopper's bad faith negotiations and reliance damages, and was never seeking to enforce the LOI. However, Hopper, Mercer, and the trial court, interpreted the complaint as a claim based on the breach of the LOI. The plain language of the complaint alleged a breach of the LOI. Danney's assertion that he was always raising a claim of failing to negotiate in good faith is disingenuous. Danney never raised that there were oral agreements supporting his first and second causes of action in the complaint. He did not

---

[4] We acknowledge that Danney raised *Copeland* in his reply to the opposition but he could not raise this new issue at that time.

23

raise the issue until he filed his first amended complaint on September 27, 2010, after the two-year deadline had passed.

Danney also contends that all of the allegations related back to the original complaint, which was filed prior to the two-year deadline. "The relation-back doctrine allows an amendment filed after the statute of limitations has run to be deemed filed as of the date of the original complaint '"provided recovery is sought in both pleadings on the same general set of facts."' [Citation.] 'In order for the relation-back doctrine to apply, "the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one."' [Citation.]" (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 296.)

"In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading." (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 277.)

Here, the original complaint clearly alleged a breach of the LOI. Even assuming Danney did not seek to enforce the LOI, he relied on it to establish that a breach had occurred. However, the LOI was non-binding and could not be the basis of a claim that it was breached. The third amended complaint relied upon a new oral agreement to negotiate in good faith. The original complaint gave no notice to Mercer or Hopper that such oral agreement existed and was the basis of the breach. As such, there was no relation back.

24

Further, in the original complaint, Danney alleged as to his employment agreement with Hopper, that there were written and oral agreements. The only written agreement was the LOI, which contradicted the allegations in the complaint. The complaint alleged that he was being paid $80,000 and the monthly profits. The LOI stated he was receiving $180,000 and yearly profits. Again, the trial court interpreted this argument as being part of the unenforceable LOI. Not until the first amended complaint did Danney allege there was a separate oral agreement regarding his employment. Again, this does not relate back to the original complaint as Mercer and Hopper did not have notice of this separate oral agreement; they could reasonably believe the terms of his employment were embodied in the LOI.

Based on the foregoing, even if Danney could allege there were oral agreements which supported his causes of action, the statute of limitations had passed for the claims.

VI

CLAIMS AGAINST MERCER

As for the fourth and fifth causes of action, Danney claims that Mercer was his agent and advisor, that Mercer improperly acted as a dual agent, and improperly advised Hopper to terminate the sale of the Practice. He further claims that Mercer was his broker, and not merely a middleman. He claims these were all questions of fact for a jury to decide.

"The elements of a cause of action for professional negligence are (1) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty;

25

(3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) "'The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.' [Citation.]" (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1164.)

In the complaint (and almost identically in the amendments), Danney claimed that he had hired Mercer in 2004 to advise him in his dental practice and that Mercer had suggested that he move to Riverside County to purchase a dental practice. Mercer advised Danney that Hopper wanted to sell the Practice. However, thereafter, Danney plead in the complaint (and almost identically in the amendments) that he and Hopper met to negotiate the terms of the sale of the Practice. Mercer agreed to prepare the sales documents. The LOI stated, "[Mercer] strives to balance each of Hopper and Danney's interests to structure a deal that provides the maximum benefit to Hopper and Danney. [Mercer] will work with each of Hopper and Danney's legal and financial advisors to ensure that the deal is fair to both sides. Each Party is encouraged to retain his own legal and financial advisors."

Danney claims that he was taking advice from Mercer. Mercer committed professional negligence and breached its fiduciary duty to Danney by advising Hopper to cancel the sale. Danney claims he was damaged because the sale of the Practice did not proceed.

To prove a claim of professional negligence, as stated, there must be "a causal connection between the negligent conduct and the resulting injury." (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 821.) As we have set forth, *ante*, Danney could not show there was an enforceable contract, either based on the LOI or a supposed oral agreement to negotiate. Hence, Danney was unable to show that there was some sort of breach due to Hopper refusing to sell him the Practice. Even if Mercer advised Hopper to not sell his Practice, and Danney suffered damages as a result of relying on buying the Practice, there is no connection between Mercer's advice to Hopper and Danney's damages.

Further, the LOI makes it clear that for the sale of the Practice, Mercer was acting as a middleman for the transaction and not as Danney's agent. The LOI made clear, and Danney signed the agreement, that Mercer was representing both parties and that each party was to obtain his own advisors. Danney never alleged that Mercer negotiated on his behalf. Whatever relationship existed between Mercer and Danney did not apply to the sale of the Practice.

Finally, Danney agreed to this dual representation and waived any conflict by signing the LOI agreeing that Mercer could work on behalf of both parties. The allegations in the complaint and amendments do not support that Mercer breached some sort of fiduciary duty to Danney or committed professional negligence.

## VII

## ADDITIONAL CLAIMS

Despite being allowed to amend his complaint on three different occasions, Danney now claims that he could show causes of action of promissory estoppel and intentional interference with prospective economic relations.

Danney claims that he can show a cause of action of promissory estoppel against Hopper based on the promise to sell the Practice and his reliance on that promise. The elements of a cause of action for promissory estoppel are: "(1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person (which we refer to as detrimental reliance), and (4) injustice can be avoided only by enforcement of the promise. [Citation.]" (*West v. JP Morgan Chase Bank, NA* (2013) 214 Cal.App.4th 780, 803.) The doctrine does not apply "'in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice. . . .' [Citation.] The promise must, in addition, be 'clear and unambiguous in its terms.'" (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.)

Danney could not reasonably rely upon a promise of Hopper to sell the Practice to him. The LOI that both parties signed specifically stated that it was non-binding. As such, there was an agreement to agree, but there was no promise to sell the Practice made by Hopper. Danney could not rely on a promise to sell to support his suffered damages.

28

Danney also seeks to have this court reverse the trial court's order sustaining the demurrer to the third amended complaint and give him leave to amend to allege a cause of action of intentional interference with prospective economic advantage against Mercer.

A cause of action for intentional interference with prospective economic advantage contains five elements: "'"(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant." [Citations.]' [Citation.]" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.) "[A] plaintiff . . . must plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.' [Citation.]" (*Id*. at p. 1153.) "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Id*. at p. 1159, fn. omitted.)

The only disruption to the relationship between Danney and Hopper that Danney can assert is that Mercer advised Hopper not to sell his Practice to Danney. This is not independently wrongful. As such, no additional claims could be raised by Danney.

## VIII

## DISPOSITION

We affirm the trial court's order granting the demurrers to the third amended complaint without leave to amend.  All parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.