Filed 10/4/23  Richter v. Manber CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| YEHUDA RICHTER et al., | B320605 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STPB05075) |
| v. | |
| MARK MANBER, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ruben N. Garcia and Edward M. Ross, Judges.  Affirmed.

Altshuler & Spiro, Bruce J. Altshuler for Appellant Yehuda Richter.

Klapach & Klapach and Joseph S. Klapach for Appellants Ingeborg Manber, Helen Manber, Edward Solomon and Benjamin Solomon.

Sheppard, Mullin, Richter & Hampton, Adam F. Streisand, Golnaz Yazdchi, Valerie E. Alter for Respondent Mark Manber.

Probate Code section 17200[1] authorizes "a trustee or beneficiary of a trust" to petition the court regarding the internal affairs of a trust, allowing such persons to seek relief including construction of the trust instrument, redress for breaches of trust, and removal of the trustee. Persons who are not a "trustee or beneficiary of a trust" lack standing under section 17200.

At issue in this case is whether appellants Helen Manber, Ingeborg Manber, Edward Solomon, and Benjamin Solomon (collectively MS appellants) and appellant Yehuda Richter have standing to file section 17200 petitions regarding the Robert Richter Trust ("the trust"), settled by the now-deceased Robert Richter. The trust provides that "[u]pon the death of the settlor, the specific beneficiaries of The Robert Richter Trust shall be determined solely and exclusively by Mark Daniel Manber, nephew of the settlor." It further provides that the "settlor wishes" appellants to receive certain distributions.

Asserting they had standing as trust beneficiaries, the MS appellants filed a petition for orders removing or suspending respondent Mark Daniel Manber as trustee, surcharging Mark[2] for damaging the trust assets, and an accounting. Yehuda separately filed a petition seeking orders removing Mark as trustee and appointing a successor trustee, compelling distribution of trust assets to Yehuda, and an accounting. Pointing to the language giving him the sole and exclusive right

---

[1]	All further undesignated statutory references are to the Probate Code.
[2]	We refer to the parties by their first or given names to avoid confusion. No disrespect is intended.

2

to determine trust beneficiaries, Mark filed demurrers to both petitions on the ground that appellants lacked standing under section 17200. The trial court agreed and sustained the demurrers without leave to amend.

The MS appellants and Yehuda now contend the trial court erred by sustaining the demurrers. We reject their contentions. The trust unambiguously vests the right to determine the beneficiaries "solely and exclusively" in Mark in his personal capacity, thereby rendering the gifts to appellants precatory and depriving them of any interest in the trust.

## FACTUAL BACKGROUND

### I. The Parties

Appellant Ingeborg Manber is the elder sister of late settlor Robert Richter. Respondent Mark Manber is Ingeborg's son, and appellant Helen Manber is her daughter. Appellants Benjamin and Edward Solomon are Helen's adult sons. Yehuda Richter "had a long and close relationship with the Decedent Robert Richter for many years"; it is unclear whether or how he may be related to Robert, Mark, or the MS appellants. Robert lived in Los Angeles County and died there on or about March 3, 2020, when he was 89. MS appellants live in the Bay Area. Mark lives in Texas, and Yehuda lives in Israel.

### II. The Trust

Robert executed the trust before a notary on or around May 30, 2018, when he was 87 years old. Appellants allege that Robert drafted the trust himself.

The trust contains six sections. Section I, "Trust Name," states the name of the trust. Section II, "Trust Property," identifies the trust assets, which "shall be used for the benefit of the trust beneficiaries, and shall be administered and distributed

3

by the trustee in accordance with this trust instrument." Section III, "Reserved Powers of Settlor," states that the trust is amendable and revocable during Robert's life "without notifying any beneficiary," and that Robert retains all rights to income, profits, and control of the trust assets during his life. It further provides that if a licensed physician certifies in writing that Robert "has become physically or mentally incapacitated, the successor trustee shall manage the trust, and shall apply for the benefit of the settlor any amount of trust income, or trust principle [*sic*], necessary in the trustee's discretion for the proper health care, support, maintenance, comfort, or welfare of the settlor, in accordance with his accustomed manner of living, until the settlor, as certified by a licensed physician, is again able to manage his own affairs, or until his death. Any income in excess of amounts applied for the benefit of the settlor shall be accumulated and added to the trust property." Section III also states that after Robert's death, "this trust becomes irrevocable and may not be altered or amended in any respect unless specifically authorized by this instrument, and may not be terminated except through distributions permitted by this instrument."

Section IV of the trust is titled "Trustees." Paragraph (A) provides that Robert is the trustee until his incapacity or death, at which point "the successor trustee shall be Mark Daniel Manber, nephew of the settlor, or if he is unable to serve, or continue serving, as successor trustee, the successor trustee shall be Helen Sabina Manber, niece of settlor." Paragraph (B) states, "Any trustee shall have the right to appoint, in writing which shall be notarized, additional trustees to serve in the order nominated if all successor trustees named in Paragraph IV(A)

4

cannot serve as trustee." Paragraph (C) clarifies that "the term 'trustee' shall include any successor trustee," and paragraphs (D) and (E) respectively provide that "[n]o bond shall be required of any trustee," and "[a] trustee shall be compensated for all reasonable expenses incurred in the administration of the trust."

Because the disputes in this case primarily center on Section V, titled "Beneficiaries," we reproduce the entire section here verbatim.

"(A) Upon the death of the settlor, the specific beneficiaries of The Robert Richter Trust shall be determined solely and exclusively by Mark Daniel Manber, nephew of settlor. No person has any claim to the assets of the trust.

"(B) The settlor wishes that the family of Aron Ross receives about one million dollars in assets according to instructions given by Aron Ross at the time of distribution.

"(C) The settlor wishes that the family of Yehuda Richter living in Elon Moreh, Israel receives about one million dollars in assets according to instructions given by Yehuda Richter at the time of distribution.

"(D) The settlor wishes that the trustee make a donation of assets to the Hillcrest Retirement Homes in the amount he/she feels is commensurate to the care and support the settlor had received and the assistance the trustee was given in the settlement of the final account with the organization.

"(E) The settlor wishes that the remaining funds be used for the benefit of his sister Ingeborg-Ruth Manber nee Richter, his nephew Mark Daniel Manber, and his niece Helen Sabina Manber and her two sons Benjamin and Edward.

5

"(F) Upon the death of the settlor, the trustee shall distribute the trust assets entirely at his/her discretion with respect to time and amounts."

The final section of the trust, Section VI, is titled "Trustee's Powers and Duties." It states that "the trustee shall have all authority and powers allowed or conferred on a trustee under California law and subject to the trustee's fiduciary duty to the settlor and the beneficiaries," and directs that "[t]he trustee shall pay the settlor's debts and death taxes from the trust assets at his/her discretion."

## III.  Pre-Litigation Events

The MS appellants allege in their petition that Robert "was severely ill in December 2019 through March 3, 2020." However, there is no allegation in either petition that a licensed physician declared Robert physically or mentally incompetent during this period. The MS appellants allege that generally, and during this period in particular, Robert had a close relationship with Helen. They allege that "Helen and Robert spoke on the phone almost daily . . . . and Helen was intimately involved in recommendations regarding optimizing Robert's medications and care." They further allege that "Robert and Mark spoke only occasionally," and that Mark did not call Robert when "Robert's health situation was critical in his final months."

On December 31, 2019, while Robert was still alive, Mark signed and had notarized a document titled "Distribution of Trust Assets for the Robert Richter Trust." The document states, in its entirety, "This is to authorize Helen Sabina Manber to act in my place in all matters related to the Robert Richter Trust." The MS appellants allege that Mark prepared the document "entirely on his own accord and without first discussing it with Helen." Mark

6

faxed the document to Helen along with a copy of the trust. Yehuda alleges that the document "effectively amounts to a written notarized resignation by Mark Manber as of December 31, 2019," while the MS appellants allege it was a "Trustee Withdrawal Agreement." All appellants also allege that Mark was the trustee at all relevant times.

Robert died on March 3, 2020. The MS appellants allege that Helen and Benjamin traveled to Los Angeles to handle Robert's affairs, while Mark "was unwilling to travel from Texas and show any involvement whatsoever in the arrangements pertaining to Robert's death." They further allege that during the next several months, Helen "performed the tasks and functions that a Trustee must, by collecting information, making necessary calls, and sending her findings and progress to Mark."

In an email to Helen dated July 29, 2020 that is attached to the MS appellants' petition, Mark thanked Helen for her "current proposals regarding disposition of the Robert Richter Trust." Those proposals appear to include marked-up draft letters to Yehuda and non-party Aron Ross regarding distributions to those individuals. In an email to Benjamin dated July 30, 2020 apparently regarding the same proposals, Mark stated, "I am the sole trustee of this trust. Period.!!!," and "I will not sign your letters.!!!!!!"

A clean copy of a letter from Mark to Yehuda, dated July 27, 2020, is attached to Yehuda's petition; Yehuda alleges that he received the letter at some unspecified point. The letter quotes the portion of Section V, Paragraph (C) of the trust stating that Robert "wishes that the family of Yehuda Richter . . . receives about one million dollars in assets." It further states that "the trust also gives me [Mark] the power to 'determine solely and

7

exclusively' who the beneficiaries will be and how much they will get," and, "[a]s such, you will receive the following assets totaling $1,000,000 as of July 27, 2020," namely $990,000 in "stocks, bonds, and mutual funds" due to a previous $10,000 gift from Robert. The letter states that it is accompanied by "a notice stating that you are a beneficiary of the Robert Richter Trust," and that the letter is intended "to clearly delineate the assets you can expect to receive." The letter concludes with a request that Yehuda sign and return "the included challenge waiver" and suggests that doing so will facilitate "immediate[]" distribution of funds to Yehuda.

Similar letters and waivers of rights to contest the trust, also dated July 27, 2020, addressed to Helen, Ingeborg, Yehuda, and Aron Ross are attached to the MS appellants' petition. The letters to Helen and Ingeborg quote the portion of Section V, Paragraph (E) stating that Robert "wishes that the remaining funds be used for the benefit of his sister Ingeborg-Ruth Manber Nee Richter, his nephew Mark Daniel Manber, and his niece Helen Sabina Manber and her two sons Benjamin and Edward." They state that "'remaining' refers to any funds not provided to Aron Ross or Yehuda Richter," both of whom "will receive no more than $1,000,000 in stocks," and that Helen and Ingeborg "will receive" "[e]xactly one-third of the 'remaining funds' described above.'

The MS appellants allege that Mark retained counsel in or around September 2020. They attached to their petition a letter dated September 23, 2020, from Mark's counsel to Ingeborg. The letter stated that counsel represented Mark "in his capacity as trustee" and that enclosures included a copy of the trust, a section 16061.7 notification, and a "Consent to Waiver of the 120-

8

Day Period to Object, pursuant to Probate Code Section 16061.7 and 16061.8."[3]  Included with the letter were blank "Consent to Waiver" forms for Aron Ross, Yehuda, "Representative of Hillcrest Retirement Homes," Helen, Benjamin, and Edward, but not Ingeborg.  Each of the "Consent to Waiver" forms identified its recipient as "a named beneficiary" of the trust.

The MS appellants further allege that Mark's counsel "sent the beneficiaries a letter describing Mark's proposed distribution schedule for the Trust assets."  The letter, attached to the MS appellants' petition, is addressed not to the MS appellants but to attorney Thomas Worth.  It states that the market value of the trust as of September 24, 2020 was $9,277,664.20.  It notes Mark's "wide discretion" and states that he "is considering the following distribution schedule, to be distributed outright and free of trust:

"1.    $1 million cash to Aron Ross.
"2.    $1 million cash to Yehuda Richter.
"3.    $10,000 to Hillcrest Retirement Home. [*sic*]
"4.    Maintaining a $1 million reserve in Trust to pay

Trust expenses, attorneys' fees, accountants, estate taxes, costs of

---

[3]    Section 16061.7 requires a trustee to notify each "beneficiary of the irrevocable trust" and "heir of the deceased settlor" of certain events, including when a trust becomes irrevocable.  (§ 16061.7, subds. (a), (b)(1), (b)(2).)  It requires that the notice include the following text "You may not bring an action to contest the trust more than 120 days from the date of this notification by the trustee is served upon you or 60 days from the date on which a copy of the terms of the trust is delivered to you during that 120-day period, whichever is later."  (§ 16061.7, subd. (h).)  Section 16061.8 limits the time to contest a trust to the period stated in section 16061.7, subdivision (h).  (§ 16061.8.)

administration. An accounting of the expenses will be provided to the remaining beneficiaries.

"5. The remainder (using today's numbers, the remainder would be $6,267,664.20) to be divided three [*sic*] ways: 1/3 to Ingeborg Ruth Manber, 1/3 to Mark Manber, and 1/9 to Helen Manber, 1/9 to Benjamin Solomon, and 1/9 to Edward Solomon.

"6. At the conclusion of the Trust administration, after all expenses are paid, any remaining amount of the $1 million reserve will be divided: 1/3 to Ingeborg Ruth Manber, 1/3 to Mark Manber, and 1/9 to Helen Manber, 1/9 to Benjamin Solomon, and 1/9 to Edward Solomon."

The MS appellants allege that Mark made a distribution in excess of $1 million to Aron Ross in or around November 2020, without subtracting $150,000 that Ross previously withdrew from a joint account he shared with Robert. They allege that Mark did not advise "any other beneficiaries" of the distribution and "has not produced any records reflecting this transaction."

The MS appellants further allege that Mark made a distribution of "approximately $811,684 to Edward, without notice to other beneficiaries," on or about December 15, 2020, and a distribution of "approximately $806,816 to Benjamin, again without notice to other beneficiaries," on or about January 7, 2021. They allege that Mark required Edward and Benjamin to place the funds with Mark's brokerage firm. They further allege that in February 2021, "Benjamin and Edward repeatedly requested an accounting and other financial details regarding the distributions that Mark had made to them," but Mark "responded with a short error-riddled email failing to provide any substance."

10

Yehuda alleges that, around this same time, Mark "sought additional documents" from Yehuda, including his Social Security card and American passport. On January 13, 2021, Yehuda sent Mark an email stating that he did not have his Social Security card and that his accountant had advised him that a W-9 form "should suffice." Later that day, Mark sent a response email stating, "I decide what satisfies me. I am the trustee. Period!!!!" On January 18, 2021, Yehuda sent Mark an email stating that he could not get an American passport due to the "the corona period" and asking if he could provide his original birth certificate and Israeli passport instead. Yehuda also referenced the W-9 form again. Mark responded a few hours later, "No & No. Quite frankly I have decided not to distribute any assets to you. I lived in Israel myself & would not have acted like you are doing. This is final!!!"

Counsel for Yehuda and the MS appellants subsequently sent Mark letters demanding that he make the distributions Robert "wished" for in the trust and provide an accounting. Yehuda also made a formal demand for an accounting pursuant to sections 16062, 16063, and 17200, subdivision (b)(7)(C). There are no allegations regarding a response to Yehuda or his counsel. Through counsel, Mark told the MS appellants, "I have reviewed the Trust. Your clients are entitled to nothing and Mark owes your clients nothing. Mark will proceed accordingly and we demand that your clients cease making meritless demands and threats against Mark regarding the Trust."

### PROCEDURAL HISTORY

## I. MS Appellants' Petition and Related Proceedings

On May 21, 2021, the MS appellants jointly filed a petition pursuant to section 17200 "for (1) removal of Trustee Mark

Manber; (2) suspension; (3) accounting; and (4) surcharge." Their petition included the allegations summarized above as well as allegations that Mark "behaved erratically and irritably" toward them, including calling them names and insulting them. Regarding standing, the petition alleged, "Petitioners are beneficiaries of the Richter Trust and are therefore interested parties under Probate Code section 17200(b)(1) with standing to petition for the removal of Mark as trustee."

The MS appellants alleged that Mark was subject to removal as trustee on numerous grounds: refusal to distribute trust funds, breach of the duty to inform, mismanagement of trust funds, unreasonable and unspecified trust expenses, breach of the duties of care and loyalty through self-dealing, breach of discretionary powers, and unfitness to serve as trustee. The MS appellants also alleged Mark must be suspended as trustee pending resolution of their removal petition to preserve the trust property. They further asserted that Mark "must be ordered to produce a report, an accounting, a disclosure of remaining assets, and transfer of the trust records" under sections 16060, 16062, and 16064. Finally, they asserted that Mark "should be surcharged for damages to trust assets," which they alleged "exceed $3 million." In their prayer for relief, the MS appellants requested orders permanently removing Mark as trustee and replacing him with Helen as successor trustee; suspending Mark as trustee pending his permanent removal; precluding Mark from further use of trust assets, particularly to fund the instant litigation; requiring him to file a report of accounting and produce all financial and tax records pertaining to the trust and distributions made; and surcharging him for damages to the trust assets.

12

After filing their petition, the MS appellants filed and Yehuda joined two motions for preliminary injunction seeking to immediately suspend Mark as trustee and preclude his use of trust assets.  The trial court, Judge Susan J. Matcham, heard and denied the motions on July 28, 2021.  During the hearing, the court remarked that "the language in section 5-A is fairly clear, and it's set out right in the beginning of the trust.  And to me, it's determinative language when a ruling has to be made in this preliminary . . . setting."

Mark filed a demurrer to the MS appellants' petition.  He asserted that the MS appellants failed to allege facts sufficient to state a cause of action because they failed to demonstrate they were beneficiaries of the trust and therefore lacked standing under section 17200.  Specifically, Mark argued that the trust was a "'power of appointment trust' under Probate Code section 15205" that afforded him, in his individual, non-fiduciary capacity, the "sole and exclusive authority to determine the persons to whom to make gifts and in what amounts."  He further argued that the power of appointment rendered the "wishes" precatory and non-binding and did not create any future interests.

The MS appellants opposed the demurrer.  In addition to arguing that the demurrer was untimely, they contended that it should be denied because they had standing as trust beneficiaries.  They argued that the trust expressly designated them as beneficiaries, and the "settlor wishes" language was mandatory, not precatory, because it was directed to the trustee.  They further argued that the trust was not a power of appointment trust, that Mark had ceded his status as trustee to Helen, and Mark's admission they were beneficiaries and

13

distributions to Edward and Benjamin estopped him from claiming otherwise. Mark filed a reply in support of the demurrer.

The trial court, Judge Edward M. Ross, heard the demurrer on October 13, 2021. The court stated that its tentative was to sustain the demurrer before giving the parties an opportunity to argue. Counsel for MS appellants contended that the demurrer was untimely and that Mark "said that we were beneficiaries. He cannot pivot now and say we're not." Counsel for Mark responded that the demurrer was timely and that section 16061.7 requires notice to be given "to not only beneficiaries but any heir at law." Mark's counsel further argued that the trust gave him discretion over beneficiaries in his personal capacity, and that leave to amend would be futile. Counsel for the MS appellants responded that the section 16061.7 notice was "not just some letter," and instead "in and of itself, gives us standing to move forward and precludes this motion from being granted."

The court asked counsel for the MS appellants whether he would like leave to amend. Counsel did not provide an answer. The court then sustained the demurrer without leave to amend, adding, "I would like it noted I would grant you leave to amend if you wanted it." The court subsequently issued a minute order stating that the demurrer was sustained without leave to amend and ordering the MS appellants' counsel to prepare the order after hearing. The court also issued a separate minute order that same day stating that the MS appellants' petition was denied without prejudice.

Notwithstanding the order directed at the MS appellants' counsel, Mark's counsel prepared and filed a notice of ruling on the demurrer and proposed judgment of dismissal. The trial

14

court, Judge Edward M. Ross, signed the order after hearing on December 20, 2021 but did not sign or enter the proposed judgment.  The MS appellants filed a notice of appeal on January 6, 2022.  The appellate court dismissed the appeal, however, because appellants failed to provide the court with a final appealable order.  The MS appellants moved to vacate the dismissal on various grounds, including their procurement on March 7, 2022 of a signed "nunc pro tunc order"[4] correcting the other October 13, 2021 minute order to state that their petition was denied with prejudice.  The appellate court did not reinstate the appeal.

The MS appellants filed a notice of appeal from the March 7, 2022 order on May 2, 2022.  Their opening brief did not disclose any of the history in the preceding paragraph to this court.  We requested supplemental briefing regarding the appealability of the March 7, 2022 order.  In that briefing, the parties agreed that the March 7, 2022 order changed the court's dismissal of the petition without prejudice to a dismissal with prejudice and thus had the legal effect of a final judgment.  (See *In re Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 754-755.)  We are satisfied that the March 7 order constitutes a final, appealable order under section 1304, notwithstanding the continued absence of a signed judgment.  We also granted the MS appellants' motion for calendar preference.

---

[4]     It seems the order was mislabeled. "An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded.  It may not be used as a vehicle to review an order for legal or judicial error by 'correcting' the order in order to enter a new one." (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 852.)

15

## II.    Yehuda's Petition and Related Proceedings

On June 7, 2021, Yehuda filed a verified section 17200 petition seeking to remove Mark as trustee and appoint a successor trustee, compel distribution of trust assets to Yehuda, and provide an accounting.  Mark filed a demurrer to the petition on September 27, 2021.

Yehuda subsequently filed a first amended petition on October 7, 2021.  In that petition, the salient allegations of which are summarized above, Yehuda asserted that he had standing "as a named beneficiary of the Trust."  He prayed for distribution of either $1 million "as provided in the Richter Trust" or $990,000 "based on the letter of July 27, 2020 from Mark Manber to petitioner"; removal of Mark as trustee "based on his failure to carry out his Trustee duties, for a breach of his fiduciary duties, due to his conflict of interest in favoring his own financial interests over those of the intended beneficiaries, in arbitrarily favoring himself and other beneficiaries over Petitioner and other similarly situated beneficiaries, and failing to timely provide an accounting to Petitioner"; an accounting; a determination that Mark resigned as trustee on December 31, 2019 and was succeeded by Helen; orders surcharging Mark and barring him from using trust assets to defend the action; and, in the alternative, an order that the July 27, 2020 letter constituted a proper exercise of Mark's power of appointment or other discretion in favor of Yehuda.

Mark filed a demurrer to the first amended petition on November 12, 2021.  Mark argued that Yehuda failed to state a cause of action because he failed to establish he was a beneficiary of the trust with standing to petition under section 17200.  Mark pointed to the court's remarks and rulings on the preliminary

16

injunction motions and his demurrer to the MS appellants' petition; he also filed a request for judicial notice of documents relevant to those proceedings. He argued the same result should be reached here for the same reasons: namely, the trust unambiguously vested in Mark personally the sole and exclusive discretion to determine the beneficiaries such that Robert's "wishes" were precatory. Mark further argued that he did not exercise his power of appointment in favor of Yehuda, there was no basis for estoppel, and Yehuda lacked standing even if the court found Mark resigned as trustee.

Yehuda filed oppositions to the demurrer and request for judicial notice. In his opposition to the demurrer, Yehuda argued that the trust was ambiguously drafted and that Mark had "cherry-picked" provisions to support his contention to the contrary. Yehuda further argued that the trust gave him a gift, asserting that Robert's inclusion of his address was "evidence that a gift to him was intended and not discretionary by Manber." He also contended that the trust did not give Mark a power of appointment, and that in any event Mark resigned as trustee and could not subsequently "un-resign." Yehuda asserted that the court was required to accept as true his allegations regarding Mark's resignation and Helen's installation as successor trustee, and that "other allegations cannot be adjudicated by demurrer." Mark filed a reply in support of the demurrer. He also filed an additional request for judicial notice of the reporter's transcript from the hearing on his demurrer to the MS appellants' petition.

The trial court, Judge Ruben Garcia, heard the demurrer on February 24, 2022. Mark's counsel reiterated the arguments in the demurrer, and reminded the court that two previous judges had ruled in his favor. Yehuda's counsel objected to the court

17

taking judicial notice of or otherwise relying on previous rulings made by other judges. He further contended that the specific gifts and residuary clause in the trust suggested no power of appointment was intended, and that the "wishes" language was not precatory. Yehuda's counsel also argued that Mark resigned as trustee; Mark's counsel responded that the December 31, 2019 document had no effect because Mark was not the trustee at that time. The court took the matter under submission.

At a subsequent hearing on March 3, 2022, the court orally sustained Yehuda's objections to the requests for judicial notice. It also sustained the demurrer without leave to amend. The court concluded that Yehuda was not a named beneficiary because that "would require the court to fully disregard the clear language stating that Mark Manber has exclusive authority to determine beneficiaries." It further concluded that Mark did not exercise a power of appointment in favor of Yehuda, as "this is contradicted by the further allegations which assert that Manber has refused to distribute the property from which the court can only infer that Manber has exercised his power to revoke the appointment." The court also rejected Yehuda's claim that he had standing because Mark resigned as trustee, stating that the theory "is not directly pled in the petition" and "the petition lacks allegations that, if the power of appointment were delegated, it has been exercised in favor of the petitioner."

The court entered a signed judgment of dismissal with prejudice on April 13, 2022. On April 11, 2022, Yehuda filed a notice of appeal from the March 7, 2022 order concerning the MS appellants' petition. We liberally construe this premature and inaccurate notice as pertaining to the April 13, 2022 judgment. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 75-76.)

18

## DISCUSSION

## I. Standard of Review

When a demurrer challenges a complaint or petition on standing grounds, "the court may not simply assume the allegations supporting standing lack merit and dismiss the complaint. Instead, the court must first determine standing by treating the properly pled allegations as true. If, having taken the allegations as true, the court finds no standing, it should sustain the demurrer. . . ." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 827 (*Barefoot*).)

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) On appeal after a demurrer has been sustained, we determine de novo whether the complaint states facts sufficient to constitute a cause of action. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) We "'assume the truth of the complaint's properly pleaded or implied factual allegations'" (*ibid.*), but we do not credit "contentions, deductions or conclusions of fact or law." (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We also consider exhibits attached to the complaint. (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*).) We affirm "'if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.'" (*Id.* at p. 399.) The appellant bears the burden of demonstrating the trial court erred in sustaining the demurrer. (*Id.* at pp. 399-400.)

Where the court sustained the demurrer without leave to amend, we also decide whether there is a reasonable probability the complaint can be cured by amendment. (*Hoffman, supra*, 179 Cal.App.4th at p. 400.) If so, it is generally an abuse of discretion

19

to sustain a demurrer without leave to amend. (*Id*. at pp. 400-401.) The appellant bears the burden of demonstrating the complaint can be cured by amendment.  (*Id*. at p. 401.)

## II.    Analysis

Under the Probate Code, a "beneficiary" is "a person to whom a donative transfer of property is made or that person's successor in interest," and "[a]s it relates to a trust, . . . a person who has any present or future interest, vested or contingent" in the trust.  (§ 24, subd. (c).)  The MS appellants and Yehuda contend they meet this definition because Section V, paragraphs (C) and (E) provide them with bequests.[5]  Those provisions state, respectively, that "The settlor wishes that the family of Yehuda Richter living in Elon Moreh, Israel receives about one million dollars in assets according to instructions given by Yehuda Richter at the time of distribution," and "The settlor wishes the remaining funds be used for the benefit of his sister Ingeborg-Ruth Manber nee Richter, his nephew Mark Daniel Manber, and his niece Helen Sabina Manber and her two sons Benjamin and Edward."

" " "The interpretation of a written instrument, including a . . . declaration of trust, presents a question of law unless interpretation turns on the competence or credibility of extrinsic evidence or a conflict therein.  Accordingly, a reviewing court is not bound by the lower court's interpretation but must independently construe the instrument at issue.  [Citations.]" [Citations.]' [Citation.]  'In construing a trust instrument, the

---

5      The MS appellants have joined and adopted the arguments raised in Yehuda's opening and reply briefs, and Yehuda has joined and adopted the arguments raised in the MS appellants' opening brief.

intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it. [Citation.]' [Citation.]" (*Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 452-453.) "The paramount rule in construing such an instrument is to determine intent from the instrument itself and in accordance with applicable law." (*Brown v. Labow* (2007) 157 Cal.App.4th 795, 812.) The Probate Code contains rules of construction for use "where the intention of the transferor is not indicated by the instrument." (§ 21102, subd. (b).) Those include "an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative" (§ 21120), construing all parts of instrument "in relation to each other and so as, if possible, to form a consistent whole" (§ 21121), and giving words "their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained" (§ 21122). "Technical words are not necessary to give effect to a disposition in an instrument." (§ 21122.)

Here, the trust uses the words "the settlor wishes." "The usual rule is that an expression of desire on the part of a testator is a mere request when addressed to his devisee but is to be construed as a command when addressed to his executor." (*In re Estate of Hood* (1943) 57 Cal.App.2d 782, 786.) The same is true in the context of a trust. (*Ibid.*) Where an expression of desire is addressed to a trustee, it is thus construed as a command; in this case, a command to the trustee that appellants receive a gift from the trust would render them beneficiaries. Appellants urge such an interpretation here.

However, section V, paragraph (A) provides that "the specific beneficiaries of The Robert Richter Trust shall be

determined solely and exclusively by Mark Daniel Manber, nephew of the settlor.  No person has any claim to the assets of this trust."  Appellants assert that this provision is directed to Mark as trustee, but this interpretation does not square with either the plain text of paragraph (A) or the text of other provisions in the trust. Paragraph (A) says "Mark Daniel Manber, nephew of the settlor"; it does not use the word "trustee" or refer to Mark in any specific capacity.  Elsewhere in the trust, Robert consistently used the word "trustee" when providing directions to the person serving in that capacity.  For instance, section III, paragraph (C) provides that if "the settlor has become physically or mentally incapacitated, the *successor trustee shall* manage the trust, and shall apply for the benefit of the settlor any amount of trust income, or trust principle [*sic*], necessary *in the trustee's discretion* for the proper health care, support, maintenance, comfort, or welfare of the settlor."  Section IV, "Trustees," similarly refers to the trustee and successor trustee in an explicit and generic sense, stating that "[a]ny trustee shall have the right to appoint, in writing which shall be notarized, additional trustees to serve in the order nominated," "[n]o bond shall be required of any trustee," and "[a] trustee shall be compensated for all reasonable expenses incurred in the administration of the trust."  Section VI, "Trustee's Powers and Duties," provides that "the trustees shall have all authority and powers allowed or conferred on a trustee under California law and subject to the trustee's fiduciary duty to the settlor and the beneficiaries," and "[t]he trustee shall pay the settlor's debts and death taxes from the trust assets *at his/her discretion*."  Section V, paragraph (A) is a notable deviation from this practice, indicating a distinct aim.

Appellants point to section V, paragraph (F) as evidence that "Section V contains Robert's *instructions* to the successor trustee, expressly stating that 'the *trustee* shall distribute the trust assets. . . .'" This provision, like the numerous others quoted above, refers to the trustee generically. It reads in full, "Upon the death of the settlor, the trustee shall distribute the trust assets entirely at his/her discretion with respect to time and amounts." It therefore lends little support to appellants' assertion that section V, paragraph (A) is also a direction to the trustee, because it plainly indicates that Robert knew how to direct the trustee to make a discretionary determination in his or her capacity when he intended to do so. Section V, paragraph (A) instead refers to Mark without reference to trustee. It is not this court's role "to insert what has been omitted, or to omit what has been inserted" from section V, paragraph (A). (Code Civ. Proc., § 1858; see Prob. Code, § 1000.) Moreover, "[w]here the person directed to carry out the wishes of the testator is both executor and legatee, the courts in construing the effect of the language have refused to follow the strict rule which imposes a mandatory duty on the executor and have apparently treated the words as being addressed to him in his capacity as legatee." (*In re Kearns' Estate* (1950) 36 Cal.2d 531, 534-535; see also *In re Collias' Estate* (1951) 37 Cal.2d 587, 590 [same].)

Section V, paragraph (A) has the hallmarks of a power of appointment, "a power that enables a powerholder acting in a nonfiduciary capacity to designate a recipient of an ownership interest in or another power of appointment over the appointive property." (§ 610, subd. (f).) "[N]o particular form of words is necessary to create a power of appointment." (*Estate of Rosecrans* (1971) 4 Cal.3d 34, 38.) Instead, section 621,

subdivision (a) provides that a power of appointment is created where "(1) There is a creating instrument. (2) The creating instrument is valid under applicable law. (3) . . . [T]he creating instrument transfers the appointive property. (4) The terms of the creating instrument manifest the donor's intent to create in a powerholder a power of appointment over the appointive property exercisable in favor of a permissible appointee."

Appellants contend these criteria are not met here because Mark is a trustee who has the duty to act in a fiduciary capacity. However, section V, paragraph (A) does not refer to Mark in that capacity and the power to select beneficiaries may lie in "the trustee or some other person." (§ 15205, subd. (b)(2); cf. *Tubbs v. Berkowitz* (2020) 47 Cal.App.5th 548, 555 [noting a dearth of authority holding that a donee cannot exercise a general power of appointment in his favor if he also is the trustee of an irrevocable trust].)

Appellants also contend that other provisions of the trust, those authorizing Yehuda (and Aron Ross) to provide instructions regarding distribution and the residuary clause, "contradict[ ] a grant of a POA." We see no inherent contradiction. The trust provides that Mark has sole and exclusive discretion to determine the beneficiaries. If he chooses to provide a gift to Yehuda, the time and amount of any distribution are entirely within the trustee's discretion. Robert's "wishes" that Yehuda receive an approximate amount in accordance with his own instructions may provide guidance, but do not limit the discretion of either Mark or the trustee. Similarly, Robert's "wishes" that remaining funds "be used for the benefit" of the MS appellants do not restrict Mark's authority to determine the beneficiaries or the

24

trustee's discretion "with respect to time and amount" of any distributions made.

Appellants further contend that section V, paragraph (A) confers "a grant of administrative authority to act as Trustee," analogizing it to case law holding that the power to "settle all questions hereunder with respect to the execution of said trust" did not grant a power of appointment. (See *Kaiser v. Gibson* (1968) 264 Cal.App.2d 319, 323.) Section V, paragraph (A) does not refer to administration of the trust, nor does it refer to the trustee. For that reason, appellants' contentions that Mark could not exercise the power because he resigned as trustee lack merit.[6] Similarly lacking in merit are appellants' speculations that "it is likely that Robert did not even know what a POA was conceptually or legally," and that Robert "could not have intended to create a power of appointment because a power of appointment trust is a *terrible* estate planning device."

Appellants contend that even if Mark does have a power of appointment, they have standing to argue that he exercised it in their favor when he sent section 16061.7 consents of waiver and letters proposing a distribution schedule to them and is estopped from claiming otherwise. Although the probate court has the inherent power to decide these types of trust-adjacent matters, see *Barefoot, supra*, 8 Cal.5th at pp. 827-828, appellants must have arguable standing to raise them. They do not here. The July 2020 letter emphasized that Mark had the sole and exclusive power to determine the beneficiaries, and the September 2020 letter Mark's counsel sent to the MS appellants

---

[6]     Yehuda asserts that we must accept as true his allegations that Mark resigned as trustee on December 31, 2019, but we do not credit conclusions of fact or law.

25

stated that Mark was "considering" a certain distribution schedule, not that he was promising one.  Further, as Mark's counsel argued at the demurrer hearing, section 16061.7 requires notice to be given "to not only beneficiaries but any heir at law," and the MS appellants were Robert's heirs at law.  Their receipt of the letter and mandatory notice did not give them a present or future interest in the trust.  Even if it did, "[u]nless made expressly irrevocable by the creating instrument or the instrument of exercise, an exercise of a power of appointment is revocable . . . so long as the interest in the appointive property, whether present or future, has not been transferred." (§ 695, subd. (b).)  The trust does not make Mark's power irrevocable, and because he holds the power in a nonfiduciary capacity he is not bound to act in any particular way when exercising or revoking the exercise of the power.  While we certainly do not condone the apparently capricious behavior alleged here, Mark was not bound by the proposed distribution schedule in the letter as no property had been transferred.

Mark did transfer trust property to appellants Benjamin and Edward, and the MS appellants contend this gave Benjamin and Edward standing as trust beneficiaries.[7]  At the very least, they contend for the first time on appeal that Benjamin and Edward have standing to seek an accounting as "interested parties" under  section 48, and that a leading treatise states that appointees "may have standing to compel an accounting by the trustee of the trust of the property subject to the power."  They do

---

[7]     We note that these distributions to purported residuary beneficiaries were made prior to gifts appellants argue were mandatory, including the distribution to Yehuda.  Appellants do not appear to take issue with this.

not expand on the circumstances in which such standing "may" exist, but assert that *Dunlap v. Mayer* (2021) 63 Cal.App.5th 419 is controlling because it holds that the estate of an individual who had an income interest in a trust during her lifetime had standing to seek an accounting after she passed. We are not persuaded appellants have demonstrated error by the court.

Even if we assume Benjamin and Edward had standing to seek an accounting, whether to grant such a request lies within the discretion of the trial court. (See *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 520, 526-528.) Appellants have not demonstrated the court abused its discretion here. *Dunlap* is not on point inasmuch as it concerns the survivability of a claim, and appellants did not raise this issue at any point during the hearing on the demurrer. They also declined the court's offer to provide them with leave to amend to clarify their allegations or assert standing under section 48 in addition to section 17200.

Finally, the MS appellants contend Helen has standing to challenge Mark's administration of the trust because the trust names her as a successor trustee. Their petition did not allege standing on this basis, and their opening brief states that Helen did not challenge Mark's status as trustee "in the interest of family harmony" notwithstanding the December 31, 2019 document purportedly authorizing Helen to act in Mark's place. There are no allegations in the petition that Helen is the current trustee, and appellants declined the opportunity to amend their petition to assert standing on this basis. Their cited case law concerning standing under the Elder Abuse Act is not applicable here. (See *Estate of Lowrie* (2004) 118 Cal.App.4th 220.) The court did not err in sustaining the demurrer.

27

# DISPOSITION

The order sustaining the demurrer to the MS appellants' petition without leave to amend and the judgment in favor of Mark and against Yehuda are affirmed.  The parties are to bear their own costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, P.J.


ZUKIN, J.

28